Frances **STIDHAM**, Cleo Tennie, Cora Estelle Surginer, and all other similarly situated, Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF LABOR, Defendant.**

**Court No. 84–12–01732.**

United States Court of International Trade.

Aug. 3, 1987.

---

Wilson, Bell & Neal, Olly Neal, Helena, Ark., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Platte B. Moring, III, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge:

Plaintiffs, representing workers at the Forrest City, Arkansas plant of Reltoc Manufacturing Company ("Reltoc"), challenge a determination of the Secretary of Labor ("Labor") denying certification of eligibility for worker adjustment assistance under section 223 of the Trade Act of 1974, 19 U.S.C. § 2273 (1982 & Supp.I 1983). Labor determined that the workers were not eligible for assistance because increases of imports did not contribute importantly to their separation from employment. After reviewing the administrative record and the arguments of the parties, the Court concludes that the determination is not supported by substantial evidence, and the case is remanded for further consideration in accordance with this opinion.

On March 22, 1984, the Amalgamated Clothing and Textile Workers Union ("ACTWU") filed a petition for adjustment assistance on behalf of the workers in Local #1048 at the Forrest City, Arkansas plant of Reltoc. Counsel for the plaintiffs in this action filed a separate petition on September 12, 1984. The Office of Trade Adjustment Assistance ("OTAA") of the Labor Department notified counsel on September 25, 1984 that an investigation was pending pursuant to the prior ACTWU petition.

During the investigation, the OTAA obtained data from Reltoc on its production for the full years 1982 and 1983 and its employment for the full years 1982 and 1983 and the first four months of 1984. The investigation revealed that Reltoc is the manufacturing arm of H. Cotler Company ("Cotler"). Reltoc has been in Arkansas since 1970 and is in the business of manufacturing men's slacks, sizes 27 to 38 waist. Reltoc operates three additional plants located in Florence, Beavertown and Winfield, Alabama. All Reltoc plants produce men's slacks solely for Cotler. Cotler sells men's slacks produced by Reltoc under the Cotler label to department stores and specialty stores throughout the United States. Cotler also imports certain types and styles of clothing which are not produced by Reltoc for sale in the retail market. (Administrative Record ("A.R."), 44).

On October 11, 1984, Labor issued a determination denying eligibility for worker adjustment assistance to employees at Forrest City. TA-W-15283 (A.R., 71-73). Notice of the determination was published in the Federal Register on October 24, 1984. 49 Fed. Reg. 42652. Labor found that the Forest City workers failed to meet the third criterion for eligibility required under 19 U.S.C. § 2272 (1982 & Supp.I 1983)[1], i.e.,

> that increases of articles like or directly competitive with articles produced by

---

1. The other two requirements are that a significant number of workers have lost employment and that sales or production of the firm have decreased absolutely. *See* 19 U.S.C. § 2272(1), (2). Labor does not contest that these two requirements were satisfied.

such workers' firm or appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and of such decline in sales or production.

The department summarized its underlying findings and reasons as follows:

> Production of men's slacks at the Forrest City plant increased in the first and second quarters of 1983 when compared to the preceding quarter, and then ceased entirely in August 1983. The Forrest City plant experienced a temporary production shutdown for the remainder of 1983 with production resuming during the first quarter of 1984. During the time of this closure, the other three facilities of Reltoc Manufacturing reported increased production of men's slacks in 1983 compared to 1982.

> Company imports of men's slacks increased from 1982 to 1983; however, these imports are targeted toward a different market segment than the products produced by Reltoc Manufacturing Company. The imported products are of a different style and are sold as slack sets; Reltoc's production, in contrast, did not include slack sets.

> The monthly average level of employment for production workers at the Forrest City, Arkansas plant increased from February 1984 through April 1984, with recalls continuing in June 1984.

(A.R., 72–73).

On November 7, 1984, ACTWU requested administrative reconsideration of Labor's negative determination. The request challenged the OTAA's failure to conduct a customer survey, stating:

> [T]he lost production and employment at Forrest City was due to Reltoc's customers buying greater quantities of imported slacks in substitution for those produced at Reltoc. The issue of Reltoc's own importation does not affect this. We fail to understand why a customer survey was not undertaken as is the usual standard procedure in TAA petitions.

(A.R., 87).

On December 21, 1984, Labor denied reconsideration of the prior determination.

(A.R., 92–94). The agency acknowledged that the production and employment criteria of 19 U.S.C. § 2272 were satisfied, but held that the "contributed importantly" test was not met. In response to ACTWU's objection to the lack of a customer survey, Labor stated:

> The union argues that had the Department conducted a survey of Reltoc's customers, it would have found that Reltoc's customers substituted imported slacks for those produced at the Forrest City plant....

> Reltoc's other three plants in Alabama had increased production of men's slacks during the time of the Forrest City's plant closure. Reltoc did not import men's slacks nor use foreign contractors during the relevant period of the investigation. Reltoc's sole customer, however, imported slack sets which include a pair of slacks and a jacket or top which were sold together as a set. According to company officials, the imported slacks incorporated into slack sets are not comparable to the type of slacks produced by Reltoc. The fabric used in the imported slacks is of a higher quality and the slacks and tops of the set are made from the same fabric. The imported slack sets are geared toward a different market segment than are Reltoc's slacks. Reltoc has never produced slack sets.

(A.R., 93–94).

Because Labor acknowledges that plaintiffs satisfied the reduced production and employment criteria under 19 U.S.C. § 2272, the Court need not address plaintiffs' challenges pertaining to those requirements. Plaintiffs' material challenge is to Labor's failure to survey the customers of the H. Cotler Company to determine whether those customers substituted imported slacks for those manufactured by Reltoc. Plaintiffs contend that the lack of such information renders the investigation marred and incomplete, and necessitates remand. In opposition to plaintiffs' challenge, the defendant submits that Reltoc made all of its sales to Cotler, and Cotler did not purchase imported products "like or directly competitive" with the items manu-

factured by Reltoc. Defendant contends that "[w]hether imports of men's slacks by Cotler's customers decreased the demand of Cotler for men's slacks from Reltoc is a consideration too far attentuated to have any bearing upon the eligibility of Forrest City plant workers for trade adjustment assistance under the applicable statute." (Defendant's brief at 12).

▇ While the findings of fact by Labor are conclusive if supported by substantial evidence, 19 U.S.C. § 2395(b), "the rulings made on the basis of those findings [must] be in accordance with the statute and not arbitrary or capricious, and for this purpose the law requires a showing of reasoned analysis." *United Steel Workers of America v. Donovan*, 10 CIT ——, 632 F.Supp. 17, 20 (1986) (*quoting International Union v. Marshall*, 584 F.2d 390, 396 n. 26 (D.C.Cir.1978)). In this regard, courts have observed that "because of the *ex parte* nature of the certification process, and the remedial purpose of the trade adjustment assistance program, the Secretary is obliged to conduct his investigation with the utmost regard for the interests of the petitioning workers." *E.g., Abbott v. Donovan*, 7 CIT 323, 327–28, 588 F.Supp. 1438, 1442 (1984) (*quoting Local 167, International Molders and Allied Workers' Union v. Marshall*, 643 F.2d 26, 31 (1st Cir. 1981)). It is not the Court's function, however, to substitute its own method of analysis for that of Labor. Rather, the Court will substantially defer to the agency's "chosen technique, only remanding a case if that technique is so marred that the Secretary's finding is arbitrary or of such nature that it could not be based on 'substantial evidence'." *Retail Clerks International Union, Local 149F v. Donovan*, 10 CIT ——, Slip Op. 86–46, at 10 (Apr. 29, 1986) (*quoting United Glass and Ceramic Workers of North America v. Marshall*, 584 F.2d 398 (D.C.Cir.1978)).

▇ A comparison of Labor's original determination of October 11, 1984 with its determination of December 21, 1984 denying reconsideration, reveals that the agency fundamentally shifted its view of the relation between Reltoc and Cotler, without offering any explanation. The original determination nowhere mentions the "Cotler" company by name and refers to clothing imported by Cotler as "company imports." [2] It is clear, therefore, that Labor regarded Reltoc and Cotler as one and the same for purposes of the investigation. Accordingly, the original determination did not characterize the data Labor obtained from Cotler regarding clothing supplied to Cotler by Reltoc and Cotler's import purchases as a "customer survey" of Reltoc's "sole customer." Indeed, in its Investigative Report (A.R., 28–52), the OTAA explicitly denied that a customer survey was conducted, and offered the explanation that

> [a] customer survey of customers of H. Cotler was not conducted because production at Reltoc's other production facilities increased during the Forrest City's shut-down in 1983; and, in 1984 employment at Forrest City has been increasing as production was resumed at the Forrest City plant.

(A.R., 49).

Two observations about this explanation should be made. First, a close examination of the data compiled by Labor reveals that the explanation is insufficient. The stated ground that production increased at the other Reltoc plants would suffice only if that increase offset all or most of the production decrease at Forrest City. Instead, company data shows that increased production at the other Reltoc plants during 1983 over 1982 offset only about one-fifth of the production decrease at the Forrest City plant during 1983. (A.R., 12–13). Such an offset does not negate the requirement that Labor investigate further to determine whether increased imports may have contributed importantly to the overall production decline. With respect to employment, while it is true that "in 1984 employment at Forrest City was increasing as production was resumed at the Forrest City plant",

---

**2.** The OTAA Investigative Report (A.R., 28–52) makes clear that Reltoc did not import men's slacks (A.R., 46), and that the "company im-

ports" mentioned in the October 11, 1984 determination were in fact Cotler imports. (A.R., 50).

the record indicates that employment levels were substantially lower than they were for the same months in 1983, which in turn were lower than levels for those months in 1982. (A.R., 15–18). Moreover, evidence of resumed employment in 1984 would not negate the need to investigate the cause of worker separations that occurred in 1983 and the beginning of 1984. *See United Steel Workers of America v. Donovan, supra.*

Second, the explanation is wholly at odds with the reasoning set forth in the subsequent determination denying reconsideration, which instead of explaining why no customer survey was taken asserts that the data from Cotler constituted a customer survey. The defendant has not shown any basis in the record for this shift in its view of the relationship between Reltoc and Cotler. To the contrary, it seems clear that Cotler and Reltoc were related companies [3] doing business with each other pursuant to a mutual, exclusive dealing arrangement with respect to the sort of clothing Reltoc produced.

The request for reconsideration filed on November 7, 1984 by ACTWU on behalf of the plaintiffs, challenged Labor's failure to survey "Reltoc's customers." (A.R., 87). ACTWU obviously did not intend to assert that Labor did not obtain information about Cotler. Cotler's imports were plainly addressed in the prior determination and were referred to as "company imports." The challenge, rather, was to the failure to survey customers of the "company" for which Reltoc was the manufacturing arm, namely Cotler. ACTWU's reference to Cotler's customers as "Reltoc's customers" was consistent with the language Labor employed in the original determination.

In the subsequent determination denying reconsideration, Labor did not dispute the appropriateness of conducting a customer survey in this case. However, instead of treating Cotler and Reltoc as two parts of the same business, Labor simply relabeled Cotler the "sole customer" of Reltoc and regarded the information concerning Cot-

ler's imports as a "customer survey." The determination thus sidestepped ACTWU's challenge.

Numerous decisions have upheld Labor's use of customer surveys as a reasonable investigative means of ascertaining whether a causal nexus existed between increased imports and a firm's lost sales. *E.g., Retail Clerks International Union, Local 149F v. Donovan,* 10 CIT at ——, Slip Op. 86–46 at 8–11; *Estate of Finkel v. Donovan,* 9 CIT 374, 380–81, 614 F.Supp. 1245, 1250 (1985). The Court has found no case, however, in which purchasing data from the exclusive distributor of a firm's products, which did not buy like-products from any other manufacturer, was treated as a valid "customer survey." To the contrary, prior cases have all involved surveys of unrelated customers operating in an open, competitive market. For instance, in *Retail Clerks International Union, Local 149F v. Donovan, supra,* although the OTAA surveyed only one major customer— which accounted for nearly all of the manufacturing firm's decline in sales during the relevant period—that customer also purchased like-products from other domestic and foreign manufacturers. The data revealed that the customer's decreased purchases from the manufacturer in question coincided with decreased import purchases and increased purchases from other domestic sources. Accordingly, the Court held that substantial evidence unquestionably supported the Secretary's finding that imports did not contribute importantly to the workers' separations. 10 CIT at ——, Slip Op. 86–46 at 11.

In this case, by contrast, Reltoc's sole "customer", Cotler, did not buy like-products from any other source, domestic or foreign. Consequently, it was presumptuous for Labor to infer from the mere fact that Cotler bought no like-imports the conclusion that import competition did not contribute importantly to Cotler's reduced orders from Reltoc. Direct competition between Reltoc-made slacks and like-imports first occurred at the next stage of distribu-

---

**3.** The record indicates that Reltoc and Cotler have common ownership (A.R., 80). The sim-

ilarity of the two companies' names is rather conspicuous.

tion (*i.e.,* Cotler's sales) where purchasers were free to buy a wide variety of products from a number of different sources. An informed causal determination requires information regarding the relative purchasing decisions of Cotler's customers. *Cf., Miller v. Donovan,* 9 CIT 473, 476, 620 F.Supp. 712, 715 (1985). Purchasing data from those customers would perhaps reveal, as the defendant asserts, that the decline in sales of Reltoc-made slacks was due to a shift in customer demand away from plain men's slacks toward "slack sets" and other "high style" items not produced by Reltoc.[4] On the other hand, the data might reveal that the reduced demand coincided with increased purchases of like or directly competitive imports. "The Secretary's failure to include the factual basis for his final determination leaves the administrative record incomplete." *Katunich v. Donovan,* 5 CIT 274, 275 (1983).

Because the record does not contain substantial evidence to support the conclusion that increased imports did not contribute importantly to reduced production at the Forrest City plant and to the plaintiffs' separation, the Secretary of Labor's determination is vacated and the action is remanded. The Secretary of Labor is directed to prepare and issue a final determination, consistent with the foregoing opinion, within 45 days after the date of this opinion and, through counsel, to provide the Court with a copy of that determination within five days of its issuance.

SO ORDERED.

---

**4.** The defendant stresses that a certain individual, in a telephone interview with OTAA investigators, expressed the opinion that a shift occurred in the fashion market during the period in question away from plain men's slacks of the sort Reltoc produced toward more "high style" items. (A.R., 47, 49). Such an unsubstantiated remark, standing alone, does not constitute substantial evidence that Cotler's customers did not increase purchases of imported slacks like or directly competitive with those produced by Reltoc. There is no indication that this individual had any personal knowledge of what Cotler's customers purchased from sources other than Cotler, and, as noted above, Labor made no attempt to obtain such information from the customers themselves. *See Chapman v. Donovan,* 9 CIT 545, 548–49 (1985).