FORMER EMPLOYEES OF HAWKINS OIL & GAS, INC., PLAINTIFFS *v.*
U.S. SECRETARY OF LABOR, DEFENDANT

Court No. 90–02–00083

(Decided December 23, 1991)

*Katten Muchin Zavis & Dombroff*, (*Joseph A. Vicario, Jr., Callie Georgeann Pappas* and *Alfred G. Scholle*) for plaintiffs.
*Stuart M. Gerson*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (*Jane Meehan*); of counsel: *Gary Bernstecker*, Attorney, United States Department of Labor, for defendant.

## OPINION

TSOUCALAS, *Judge*: Pursuant to Rule 56.1 of the Rules of this Court, plaintiffs, former employees of Hawkins Oil and Gas, Inc. ("Hawkins"),[1] move for judgment upon the agency record. Plaintiffs maintain there is insufficient evidence on the administrative record to sustain the U. S. Department of Labor's ("Labor") decision to deny their petition for certification of eligibility for trade adjustment assistance as provided in 19 U.S.C. § 2371 (1988). Labor maintains its determination is supported by substantial evidence on the administrative record and, therefore, should be affirmed.

The Court's jurisdiction is properly grounded on 19 U.S.C. § 2395 (1988) and 28 U.S.C. § 1581(d)(1) (1988). In accordance with the standard of review set forth therein, the Court cannot, in good conscience, affirm a determination based on what appear to be questionable investigative procedures. The administrative record developed during the investigation, notably scant, strongly indicates that Labor's investigative endeavors were, at best, lax. This, despite the fact that the action was initially remanded at Labor's request. Consequently, this case must be remanded once again.

## BACKGROUND

In response to a petition filed by plaintiffs, Labor, on October 23, 1989, initiated an investigation to determine whether they were entitled to trade adjustment assistance. Plaintiffs' petition, denied on December 18, 1989, noted that plaintiffs had failed to fulfill the necessary criteria. Specifically, Labor determined that increased imports of like or directly competitive articles had not contributed importantly to the

---

[1] The separated employees involved in this action are Sheree P. Henderson, geological technician; Richard D. Easley, senior exploration geologist; and Gary J. Rowell, also a senior exploration geologist. All three were employed in Hawkins' Exploration Department.

workers' separation. On December 28, 1989, Mr. Rowell, on behalf of the separated workers, requested reconsideration of Labor's determination. This appeal was dismissed on January 17, 1990, because Labor deemed the request for reconsideration did "not present evidence that the Department erred or new facts of a substantive nature bearing on the determination." Administrative Record (Public) ("AR") at 49. The instant action followed.

Labor's investigation, conducted by Ms. Bettyjane Coker, reveals that plaintiffs had been employed by Hawkins, a company principally engaged in the exploration and production of crude oil and natural gas. A significant portion of Hawkins' revenues, however, flowed from management services it provided for unaffiliated oil companies. Sometime between June 1989 and July 1989, Hawkins placed plaintiffs on lay-off status, citing economic setbacks in the oil business as the reason for their separation.

Labor's investigation consisted primarily of a short questionnaire completed by a Hawkins representative and a survey of a majority of the firm's customers. Hawkins' responses to the questionnaire appear obviously careless and incomplete. Pertinent questions such as whether the separated workers were identifiable by group, and whether the firm perceived that imports had an adverse effect on its sales and employment needs were answered inconclusively. Confidential Administrative Record at 28–38. Additionally, no inquiry was made as to what impact, if any, imports of oil and natural gas had made on Hawkins' exploration activities. Finally, although the questionnaire appears to have been returned unsigned or otherwise authenticated, Labor made no effort to verify the information contained therein.

The survey of Hawkins' patrons consisted of a telephonic survey of a majority of Hawkins' major customers. Each company was interviewed via a contact person who apparently was asked only one question: Whether, in lieu of purchasing oil and gas from Hawkins, they engaged in the importation of crude oil or natural gas during the period of investigation. The companies contacted responded negatively. Here again, no effort was made to verify the data received.

The administrative record also includes statistical data on the state of the national oil and gas industry during the period of investigation. AR at 23–24. Ironically, Labor's investigation determined that aggregate U.S. imports of like or directly competitive articles increased during the period studied. AR at 39.

On the basis of this limited investigation, Labor reached its initial negative determination. Upon the commencement of this action, Labor agreed to a remand to allow reevaluation of plaintiffs' petition. The supplemental administrative record developed on remand indicates that although Labor collected additional financial information on the subject firm, vital areas of inquiry were again disregarded.

### DISCUSSION

Congress introduced trade adjustment assistance in the Trade Act of 1974, codified at 19 U.S.C. § 2271 *et seq.* (1982 & Supp. II 1984). The law was designed to provide temporary financial assistance for workers who have been partially or totally displaced as a result of increased imports. *Former Employees of Parallel Petroleum . v. U.S. Secretary of Labor*, 14 CIT 114, 118, 731 F. Supp. 524, 527 (1990); *Former Employees of Linden Apparel Corp. v. United States*, 13 CIT 467, 715 F. Supp. 378, 379 (1989). Entitlement to the benefits is governed by 19 U.S.C. § 2272 (1988). That section provides in pertinent part:

**Group eligibility requirements; agricultural workers; oil and natural gas industry**

(a) The Secretary shall certify a group of workers (including workers in any agricultural firm or subdivision of an agricultural firm) as eligible to apply for adjustment assistance under this part if he determines —

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decrease absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

Because the 1984 provision was perceived to exclude a group of workers most affected by increased imports — those employed by firms engaged exclusively in oil and gas exploration activities, Congress amended 19 U.S.C. § 2272 to specifically encompass such workers. The amendment, embodied in the Omnibus Trade and Competitiveness Act of 1988, states:

(2)(A) Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas, shall be considered to be a firm producing oil or natural gas.

(B) Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas, or otherwise produces oil or natural gas, shall be considered to be producing articles directly competitive with imports of oil and with imports of natural gas.

When Labor is presented with a petition for trade adjustment assistance, it has an affirmative duty to investigate whether petitioners are members of a group which Congress intended to benefit from the legislation. *Stidham v. U.S. Dep't of Labor*, 11 CIT 548, 669 F. Supp. 432 (1987); *Cherlin v. Donovan*, 7 CIT 158, 585 F. Supp. 644 (1984).

Accordingly, although this court must uphold Labor's determinations regarding certification for trade adjustment assistance if they are supported by substantial evidence, 19 U.S.C. § 2395(b) (1988); *see also, Former Employees of Gen. Elec. Corp v. U.S. Dep't of Labor*, 14 CIT 608, Slip Op. 90–86 (Sept. 6, 1990); *Woodrum v. Donovan*, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd, sub nom. Woodrum v. United States*, 737 F.2d 1575 (1984), a "reviewing court may remand a case and order the Secretary to further investigate if 'good cause [is] shown.'" *Linden Apparel Corp.*, 13 CIT at 469, 715 F. Supp. at 381 (citing 19 U.S.C. § 2395 (b)).

This court has unequivocally declared that no deference is due to determinations based on inadequate investigations. *Former Employees of General Elec. Corp.*, 14 CIT 608, Slip. Op. 90–86; *United Elec. Radio and Machine Workers of America v. Elizabeth Dole, Secretary of Labor*, 14 CIT 818, Slip Op. 90–131 (Dec. 13, 1990); *Linden Apparel Corp.*, 13 CIT 467, 715 F. Supp. 378. In each of the aforementioned cases, the court established that although Labor possesses considerable discretion in the handling of trade adjustment assistance investigations, there exists a threshold requirement of reasonable inquiry. Investigations that fall below this threshold cannot constitute substantial evidence upon which a determination can be affirmed.

In the instant case, the Court has combed the administrative record in search of substantial evidence to support Labor's determination; to no avail. The record is devoid of any discussion regarding the investigative measures undertaken by the agency. Investigation reports provide only dispositive conclusions without any explanation of how they were derived. Additionally, what little information Labor gathered apparently was never verified. Moreover, it appears that essential inquires were either never made or unacceptably executed. It baffles the Court that Labor did not require the subject firm to provide full information on the impact of imports to its exploration operations.

Regarding Labor's telephonic survey of Hawkins' customers, the Court cannot accept the respondents' answer to an oversimplified inquiry as sufficient evidence to support the agency's conclusion that Hawkins' operations were not adversely affected by imports of oil and natural gas. It is not enough to ask Hawkins' customers if they engaged in the importation of oil and gas during the period under investigation. Indeed, the surveyed companies, comprised mostly of brokers engaged in sales to end users, were never in the business of importing or producing oil and gas. It seems unlikely then that these companies would abruptly alter their business practices, *i.e.*, go from being a procurer to a producer or importer of these products. However, it is quite feasible that the respondents could purchase oil and gas from domestic suppliers who, in turn, import these products.

As for Labor's finding that Hawkins' displaced workers are not separately identifiable by operations, the Court can find no basis in the administrative record to support this conclusion. In fact, with the

exception of a Hawkins Company brochure (provided by plaintiffs) giving a brief job description of the positions held by Messrs. Rowell and Easley, the record is absolutely devoid of any discussion regarding the workers' positions.

While the Court may not be best suited to evaluate the complexities of the oil and gas industry, in order to fulfill its statutory mandate of reviewing Labor's determinations, it must engage in some kind of analysis of the process by which that agency arrived at its decision. Without any explanation on the record, such analysis is impossible. Despite its conviction that geological staff operations are substantially specific, the Court is not empowered to make such determinations. However, it is authorized to require that Labor provide an explanation of the criterion used to determine whether workers are identifiable by operations. Without a detailed reasoning of its procedure, the Court is unable to assess whether Labor's conclusions are supported by substantial evidence.

## CONCLUSION

Accordingly, the Court finds Labor's repeated denial of plaintiffs' petition for certification is not supported by substantial evidence. Indeed, the administrative record is so sorely lacking of information, that it is difficult to comprehend that any determination at all could have been made without further inquiry.

Hence this action is remanded to the Secretary of Labor who shall, within sixty days, reevaluate plaintiffs' petition in strict accordance with this decision.

Remand results shall be filed with the Court immediately upon the investigation's completion, but in no event later than ninety days of issuance of this opinion.