FORMER EMPLOYEES OF KOMATSU DRESSER, PLAINTIFFS *v.*
U.S. SECRETARY OF LABOR, DEFENDANT

Court No. 91–08–00559

(Dated April 24 1992)

*Harold Langford, pro se* for plaintiff.

*Stuart M. Gerson,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, *(Vanessa P. Sciarra), Scott Glabman,* U.S. Department of Labor, of counsel, for defendant.

### MEMORANDUM AND ORDER

GOLDBERG, *Judge:* In this action, Harold Langford, on behalf of the former employees of Komatsu Dresser Company ["Komatsu"], filed this action appealing a final determination of the Secretary of Labor ["Secretary"] denying certification for trade adjustment assistance benefits pursuant to 19 U.S.C. § 2272 (1988). The court has jurisdiction under 28 U.S.C. § 1581(d)(1) (1988) and 19 U.S.C. § 2395(a) (1988).

---

[16]*See* Tr. at 172–73.

Plaintiffs contest the Secretary's determination that the third eligibility criterion of 19 U.S.C. § 2272 was not met because increased imports did not "contribute importantly" to plaintiffs' loss of employment. After reviewing the administrative record and the arguments of the parties, the court concludes that the Secretary's determination is not supported by substantial evidence. Therefore the court remands the case to the U.S. Department of Labor ["Labor"] to (1) further investigate plaintiffs' allegations pursuant to the court's instructions set forth below and (2) reevaluate plaintiffs' eligibility for trade adjustment assistance benefits in light of newly discovered evidence, if any.

## BACKGROUND

On February 22, 1991, Harold Langford petitioned Labor on behalf of former employees of the Galion, Ohio facility of Komatsu for certification of eligibility for trade adjustment assistance benefits. The petition alleged that "[p]arts being shipped in from Japan [by Komatsu], [and Komatsu's] buying [of] other foreign products" caused Komatsu to displace 156 employees between October 1, 1990 and February 7, 1991. Administrative Record (Public) at 2.

On March 4, 1991, Labor initiated an investigation regarding workers at the Galion facility of Komatsu. The Galion facility produced cranes, excavators, planers, graders, rollers and hydraulic cylinders during the period of investigation. Labor investigated the sales and production of these products and determined that sales and production only significantly declined for rollers during the period of investigation.[1] Administrative Record (Public) at 13.

Based on this information, Labor denied plaintiffs' petition for certification of eligibility on April 3, 1991. Administrative Record (Public) at 33. Labor stated that the third criterion of 19 U.S.C. § 2272 (a) was not met. Specifically, the Secretary explained that the customer survey revealed that Komatsu's roller customers did not purchase imported rollers during the period of investigation. Therefore, imports of rollers did not "contribute importantly" to the displacement of the petitioning workers. Notice of this negative final determination was published in the *Federal Register* on July 11, 1991. *See* Negative Determination Regarding Eligibility to Apply for Worker Adjustment Assistance, 56 *Fed. Reg.* 31678 (1991).

On May 30, 1991, Harold Langford sought administrative reconsideration of the Secretary's negative determination. In his letter to Labor, Mr. Langford stated that the petitioning workers had documents which would prove the third eligibility criterion of 19 U.S.C. § 2272 (1988). Mr. Langford attached to his letter purchase orders, packing lists and an inventory control card which revealed that Komatsu imported compo-

---

[1] Production of cranes, excavators and planers increased and production of graders declined insignificantly. Sales of cranes, excavators, planers and graders increased or remained the same. Administrative Record (Public) at 13.

nents for construction equipment it produced. Administrative Record (Public) at 38.

The Secretary denied the workers' request for reconsideration, concluding that while Komatsu was indeed consistently importing some components for use in construction equipment production, none of the imported components had previously been produced by the petitioning workers.

Mr. Langford sought judicial review of the Secretary's negative determination by filing a letter on August 6, 1991 at the Office of the Clerk of the United States Court of International Trade. The letter was deemed to constitute a summons and complaint. Labor responded with an answer filed on October 7, 1991. The Clerk of this court accepted a letter from plaintiff dated December 4, 1991 as plaintiffs' motion for judgment upon the agency record. The motion was filed on December 9, 1991.

## DISCUSSION

Congress introduced trade adjustment assistance in the Trade Act of 1974, codified at 19 U.S.C. §§ 2271 *et seq.* (1988 & Supp. II 1990) to provide temporary financial assistance for workers who have been partially or totally displaced as a result of increased imports. *Former Employees of Hawkins Oil & Gas, Inc. v. U.S. Secretary of Labor*, 15 CIT 653, Slip Op. 91–115 at 5 (Dec. 23, 1991); *Former Employees of Linden Apparel Corp. v. United States*, 13 CIT 467, 715 F. Supp. 378, 379 (1989). Pursuant to 19 U.S.C. § 2272 (1988), a group of workers may be eligible to apply for adjustment assistance if the Secretary determines, after investigation:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

When reviewing a determination by Labor regarding certification for trade adjustment assistance, the court must uphold Labor's determination if it is supported by substantial evidence and a reasoned analysis, and is in accordance with law. 19 U.S.C. § 2395(b) (1988); *see also Stidham v. U.S. Dept. of Labor*, 11 CIT 548, 551, 669 F. Supp. 432, 435 (1987); *United Steel Workers of America v. Donovan* 10 CIT 147, 150, 632 F. Supp. 17, 20 (1986). The reviewing court may remand the case to the Secretary to further investigate if "good cause [is] shown;" 19 U.S.C. § 2395(b); *see also Hawkins Oil & Gas, Inc.*, Slip Op. 91–115 at 7; and *Linden Apparel Corp.*, 13 CIT at 469, 715 F. Supp. at 381, (citing 19

U.S.C. § 2395(b)); however, it is not the court's function to substitute its own analysis for that of Labor.

Labor has considerable discretion in managing trade adjustment assistance investigations. However where Labor conducts an inadequate investigation by failing to make reasonable inquiry, the court has good cause to remand the case to Labor to take further evidence. *Hawkins Oil & Gas, Inc.*, Slip Op. 91–115 at 7; *Former Employees of Gen. Elec. Corp. v. U.S. Dept. of Labor*, 14 CIT 608, Slip Op. 90–86 at 9, 11 (Sept. 6, 1990); *United Elec. Radio and Machine Workers of America v. Elizabeth Dole, Secretary of Labor*, 14 CIT 818, Slip Op. 90–131 at 26 (Dec. 13, 1990); *Linden Apparel Corp.*, 13 CIT at 469, 715 F. Supp. at 381. In this regard, courts have observed that "because of the *ex parte* nature of the certification process, and the remedial purpose of the trade adjustment assistance program, the Secretary is obliged to conduct his investigation with the utmost regard for the interests of the petitioning workers." *Stidham*, 11 CIT at 551, 669 F. Supp. at 435, *citing Abbott v. Donovan*, 7 CIT 323, 327–28, 588 F. Supp. 1438, 1442 (1984) (*quoting Local 167, International Molders and Allied Workers' Union v. Marshall*, 643 F.2d 26, 31 (1st Cir. 1981)).

In the instant case, the court is not persuaded that the Secretary made reasonable inquiries regarding allegations in the workers' petition that imported *components* "contributed importantly" to the plaintiff workers' displacement. Plaintiff workers in this case claim that Komatsu transferred production of components, formerly performed by plaintiff workers, to foreign producers.[2] In its investigation, Labor first examined whether increased imports of construction equipment, the fully assembled product of Komatsu, had contributed importantly to a decline in sales or production and employment. Labor found that the plaintiff workers did not meet the third eligibility criterion in 19 U.S.C. § 2272 (1988). However, Labor's investigation and determination were misdirected since the Secretary failed to investigate plaintiffs' allegation in the petition that imports of components caused plaintiffs' displacement.

Plaintiffs then requested administrative reconsideration and submitted evidence to Labor demonstrating that Komatsu imported some **components** for use in assembling its construction equipment. Specifically, plaintiffs submitted the following evidence: a packing slip for tandem mounting sleeves and final drive housings ordered from Canada on August 5, 1991; a packing list for sprockets and axle weldments ordered from Brazil on October 18, 1990; an inventory control card for sprockets again ordered from Brazil to be delivered on February 11, 1991; and an invoice for excavator parts to be sent from Japan on January 31, 1991. In addition, plaintiffs urged Labor to contact them during its analysis of

---

[2] *In United Electrical, Radio and Machine Workers of America v. Lynn Martin, U.S. Dept. of Labor*, 15 CIT 299, Slip Op. 91–53 at 11–13 (June 27, 1991), Judge Restani recognized that domestic component producers could claim the right to trade adjustment assistance due to competition from imported components if the two component products were like or directly competitive.

their request if more evidence was needed to meet the requirements of the third eligibility criterion in 19 U.S.C. § 2272.

During its examination of plaintiffs' request for administrative reconsideration, the Secretary questioned M.E. Guilfoy, Manager of Human Resources at Komatsu, regarding the evidence of imported components submitted by plaintiffs. Mr. Guilfoy responded on June 26, 1991 and indicated: (1) that tandem mounting sleeves, a component of its motor grader, would be outsourced **in the future**; (2) that the order for final drive housings placed in Canada was merely the result of scheduling difficulties; however, the housings would also be outsourced in the future; (3) that the sprockets ordered from Brazil and the excavator parts ordered from Japan were never manufactured by the company; (4) that the axle weldments would continue to be manufactured by the Galion facility; and (5) that moldboards, a component of their motor grader, would soon be outsourced. Additionally, Mr. Guilfoy indicated that the decisions to outsource the production of certain of the above-named components were made after the Labor's investigation. Administrative Record (Public) at 43.

After receiving this response, the Secretary did not inquire whether tandem mounting sleeves or axle weldments were actually being imported during the investigative period as evidenced by the packing slip and list submitted to Labor by plaintiffs. More importantly, Labor failed to investigate whether Komatsu had increased its reliance on imports of any other components which were formerly produced by the plaintiff workers even though plaintiffs informed Labor that they could obtain information regarding other imported components if necessary to meet the eligibility criteria. There is no evidence in the record that Labor sought any information from plaintiffs.

Labor's investigations of trade adjustment assistance cases are typically limited to questioning the displacing company and surveying its customers. However, the investigation of cases which involve an increased reliance by a company on imports of **components**, which were formerly produced by plaintiff workers, necessarily requires different investigative methods. In the instant case for example, a customer survey is useless since customers of fully assembled construction equipment are unlikely to know whether the individual component parts of their equipment are imported. Here, Labor must resolve which imported components plaintiff's allege to have caused their displacement, and further determine whether their importation "contributed importantly" to the workers' displacement.

### CONCLUSION

After review of the record, the court concludes that Labor conducted an inadequate investigation in this case. Therefore, the court remands the case to the Secretary to investigate whether Komatsu increased its reliance on imports of any components which were previously produced by the petitioning workers. The Secretary is then directed to reevaluate whether petitioners are eligible for assistance pursuant to 19 U.S.C.

§ 2272, in light of any new evidence, and to issue a final determination within 45 days after the date of this opinion. The Secretary shall provide the court, through counsel, a copy of that determination within five days of its issuance.