**PUBLIC VERSION**

FORMER EMPLOYEES OF SWISS INDUSTRIAL ABRASIVES, PLAINTIFFS *v.* UNITED STATES, DEFENDANT

Court No. 92–08–00547

(Dated May 5, 1995)

*Naida Thomas, pro se,* for plaintiffs.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Rhonda K. Schnare),* for defendant.

### MEMORANDUM AND ORDER

GOLDBERG, *Judge:* This action comes before the court on plaintiffs' renewed motion for judgment on the agency record. The court previously remanded this action to the United States Department of Labor ("Labor") with instructions to reconsider plaintiffs' petition for certification of eligibility for trade adjustment assistance ("TAA"). *Former Employees of Swiss Industrial Abrasives v. United States,* 17 CIT 945, 830 F. Supp. 637 (1993) *("Swiss Abrasives I").* After conducting a new investigation pursuant to the court's instructions in *Swiss Abrasives I,* Labor returned a negative determination denying plaintiffs' petition for certification of eligibility for TAA. Plaintiffs now contest Labor's remand determination. The court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(d)(1) (1988).

### BACKGROUND

On January 16, 1992, Ms. Naida Thomas, President of Local 411 of the International Chemical Workers Union, filed a petition for certification of eligibility for TAA with the Office of Trade Adjustment Assistance, U.S. Department of Labor, on behalf of all the former workers of Swiss Industrial Abrasives, Alliance, Ohio ("SIA Ohio"). *Public Record* at 2.

The petition stated that the employees produced abrasives in all forms, including various belts, sheets, discs, rolls, and jumbo rolls at the SIA Ohio plant. *Id.* The petition also stated that layoffs began at the plant in December 1990, and that 165 hourly workers and management would be released by the scheduled closing of the plant on February 4, 1992. *Id.* The petition alleged that the plant was closing because of increased imports from SIA Ohio's parent company, Swiss Industrial Abrasives of Switzerland ("SIA Switzerland"). *Id.*

In response to plaintiffs' petition, Labor initiated an investigation of the SIA Ohio plant. The period of investigation relevant to the petition was 1990 and 1991. *See Public Record* at 14–17. Labor discovered that a domestic abrasives manufacturer, Sancap Abrasives, Inc. of Alliance, Ohio ("Sancap") had expressed interest in acquiring the SIA Ohio plant. *Id.* at 23. Labor obtained a copy of an Agreement for Sale & Purchase of Business Assets ("Sale Agreement") in connection with the proposed purchase of SIA Ohio's assets by Sancap, which was dated December 31, 1991.[1] Labor also obtained a copy of a Distribution Agreement between SIA Switzerland and Sancap. [          ] *Confidential Record* at 29–46. The SIA Ohio plant ultimately closed on February 4, 1992, and Sancap subsequently assumed operation of the plant.

In addition, Labor conducted a survey of three former customers of SIA Ohio, in which it collected import information for 1990 and 1991. This survey indicated to Labor that these former customers had not substituted imported abrasives for purchases from SIA Ohio in 1990 or 1991. *Public Record* at 23; *see also Confidential Record* at 47–54. Relying primarily on the survey, Labor concluded that the third criterion of § 222 of the Trade Act of 1974, which requires that increases in imports "contribute[   ] importantly" to the layoffs, had not been satisfied. *Public Record* at 56. Consequently, on April 14, 1992, Labor determined that the workers formerly employed at SIA Ohio were not eligible to receive worker assistance and issued a Notice of Negative Determination Regarding Eligibility to Apply for Worker Adjustment Assistance. *See Determination Regarding Eligibility to Apply for Worker Adjustment Assistance,* 57 Fed. Reg. 15,331 (Apr. 27, 1992).

On April 21, 1992, petitioners filed a request for administrative reconsideration of Labor's notice of negative determination. *Public Record* at 60–61. Petitioners stated that, before 1980, SIA Ohio had manufactured all of its own products. *Id.* at 60. After SIA Ohio was purchased by SIA Switzerland, however, petitioners alleged that SIA Ohio began to import more and more products until the plant closed on February 4, 1992. *Id.*

In response to petitioner's request for reconsideration, Labor obtained statistical information regarding imports and sales from SIA Switzerland and Sandcap. The information provided by SIA Switzerland indicated to Labor that: [

---

[1] The Sale Agreement is contained in the *Confidential Record* at 27–28.

]. *Confidential Record* at 66. Based on information from SIA Switzerland and its prior survey, Labor denied petitioners' request for rehearing on July 24, 1992. *SIA of America, Alliance, Ohio; Negative Determination Regarding Application for Reconsideration,* 57 Fed. Reg. 34,318 (Aug. 4, 1992).

Petitioners then filed a motion for judgment on the agency record with this court. Upon review, the court found several inadequacies in the statistical information obtained by Labor from SIA Switzerland. *See Swiss Abrasives I,* 17 CIT 950, 830 F. Supp. at 641–42. The court also found that, although the Sale and Distribution Agreements comprised much of the material in the administrative record, Labor failed to analyze them fully. In particular, Labor failed to explore whether there was an overall market strategy by SIA Switzerland to gradually phase out domestic production in favor of imports. *See id.*

The court therefore remanded plaintiffs' action and instructed Labor to reexamine petitioners' claim that imports from SIA Switzerland of like or competitive products caused production and employment to fall at the SIA Ohio plant. Upon remand, Labor was instructed to: (1) analyze verified import and production data, based on volume rather than value, that was sufficiently broken down along product lines to reflect the impact of imports from SIA Switzerland upon production at SIA Ohio; and (2) take into account the Sale and Distribution Agreements contained in the record. *Swiss Abrasives I,* 17 CIT at 950, 830 F. Supp. at 642.

On remand, Labor collected additional information from Sancap concerning SIA Ohio's production, sales, and imports.[2] Based on the results of its remand investigation, Labor affirmed its initial negative determination on November 22, 1993. *Supplemental Public Record* at 43–47. Thereafter, plaintiffs renewed their motion for judgment upon the agency record. Upon review, the court denies plaintiffs' motion for judgment on the agency record and affirms Labor's negative determination.

## DISCUSSION

The question presented to the court is whether Labor's negative remand determination is supported by substantial evidence and is otherwise in accordance with law. *Former Employees of General Elec. Corp. v. United States Dep't of Labor,* 14 CIT 608, 611 (1990) (citations omitted). Substantial evidence is more than a mere scintilla; it is such evidence that reasonably supports a conclusion. *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd,* 5 Fed. Cir. (T) 77, 810 F.2d 1137 (1987). An assessment of the substantiality of record evidence must take into account whatever else in the record fairly detracts from its weight. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951). Thus, the court must consider the record as a whole. *See id.*

---

[2] These statistics are contained in the *Supplemental Confidential Record* at 28–33.

To certify a group of workers as being eligible for TAA, Labor must determine:

>    (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
>    (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, *and*
>    (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof *contributed importantly* to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a) (1988) (emphasis added). The phrase "contributed importantly" is defined as "a cause which is important but not necessarily more important than any other cause." 19 U.S.C. § 2272(b)(1) (1988).

Pursuant to the instructions of this court in *Swiss Abrasives I,* Labor obtained additional production and sales data from SIA Switzerland and Sancap. Labor determined from this data that increases in imports of abrasive materials did not contribute importantly to worker separations. Hence, Labor denied plaintiffs' application for certification. Upon review, the court concludes that Labor's remand determination is supported by substantial evidence on the record and otherwise in accordance with law.

Statistical information from Sancap indicates that imports declined absolutely in every major product line during the period of investigation. *Supplemental Public Record* at 46. For example, between 1990 and 1991 the volume of imported wide belts declined from approximately [ ] reams[3] to [ ] reams, and the volume of imported rolls declined from approximately [ ] reams to [ ] reams. *Supplemental Confidential Record* at 31–32. Import volumes of narrow belts, sheets, discs, and specialty items similarly declined. *Id.*

The statistics provided by Sancap also show that the percentage of imports to sales declined for every major product line during the period of investigation, with the exception of discs. *Supplemental Confidential Record* at 31–32. For example, imports of wide belts comprised [ ] percent of sales in 1990, but only [ ] percent in 1991. *Id.* at 32. Similarly, imported rolls accounted for [ ] percent of sales in 1990, but only [ ] percent in 1991. *Id.* Although the percentage of imports of discs to sales did not decline, discs accounted for less than [ ] percent of sales in 1990 and less than [ ] percent of sales in 1991. *Id.*

Furthermore, record evidence indicates that Sancap produces a higher volume of products than SIA Ohio did before its close, and that Sancap's long-term strategy is to *increase* domestic production. *Supplemental Public Record* at 46. Specifically, [

]

---

[3] One ream equals 47,520 square inches.

In sum, upon remand Labor found that: (1) imports of abrasives decreased absolutely for every major product line in 1991 compared to 1990; (2) except for discs, the percentage of imports to sales declined for every major product line in 1991 compared to 1990; (3) Sancap reported increased sales and production in 1992 when compared to SIA Ohio's sales and production in 1991; and (4) Sancap has plans to further increase domestic production.

Notwithstanding all such record evidence, plaintiffs contend that the Petition Verification performed by the Office of Trade Adjustment Assistance on January 27, 1992, evidences SIA Ohio's intent to abandon domestic production in favor of imports. Question 7a of the Petition Verification asks whether SIA Ohio imports any products. *Public Record* at 7. The answer provided is "yes," with a notation adding, "will go to 100%." *Id.* Plaintiffs, however, point to no information in the record to support the assertion that imports have in fact gone to 100 percent, or that imports increased during the period of investigation. Indeed, as discussed above, the statistics provided by Sancap indicate that imports actually decreased during the period of investigation, both absolutely and as a percentage of sales. Consequently, the Sancap statistics completely refute the unsubstantiated assertion contained in the Petition Verification that SIA Ohio intended to increase imports to 100 percent.

Plaintiffs also note that [
            ]
*Confidential Record* at 32.

Plaintiffs further note that [
            ][4]
*Confidential Record,* Distribution Agreement ¶ 2(c). [
            overall market strategy. As a result, the court finds plaintiffs' reliance upon ¶ 2(c) in the Distribution Agreement unvailing.]

Finally, plaintiffs contend that Labor was unable to collect accurate data. In particular, plaintiffs argue that Labor was misled by Sancap President Robert Stuhlmiller's statement that all SIA Switzerland and Sancap products bore country of origin markings. Plaintiffs allege that some products were not so marked, and that therefore all of the information supplied by Sancap should be discredited. Although the record is unclear as to whether Mr. Stuhlmiller's statement was completely accurate, the court finds the inference drawn by plaintiffs from the record to be entirely unwarranted.

## CONCLUSION

Upon review, the court finds that Labor's determination is supported by substantial evidence and is otherwise in accordance with law. For the foregoing reasons, it is hereby ORDERED that plaintiffs' renewed motion for judgment on the agency record is DENIED. Judgment will be entered accordingly.

---

[4] [              .              ] *Confidential Record,* Distribution Agreement ¶ 1(a).