**LOCAL 116, INTERNATIONAL UNION OF ELECTRONIC, ELECTRICAL, SALARIED, MACHINE AND FURNITURE WORKERS, AFL–CIO, Plaintiff,**

v.

**UNITED STATES SECRETARY OF LABOR, Defendant.**

Court No. 90–08–00437.

United States Court of International Trade.

June 25, 1992.

Brodie Rubinsky & Ford, Joshua P. Rubinsky, Philadelphia, Pa., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Jeffrey M. Telep, Washington, D.C. (Yvonne Senning, Attorney–Advisor, U.S. Dept. of Labor, of counsel), for defendant.

## OPINION

TSOUCALAS, Judge:

Plaintiff filed this action appealing a negative determination of the Secretary of Labor ("Labor") denying certification for trade adjustment assistance benefits. *Notice of Negative Determination Regarding Eligibility to Apply for Worker Adjustment Assistance* ("Negative Determination"), 55 Fed.Reg. 21,955 (1990).

Plaintiff maintains that there is insufficient evidence on the administrative record to sustain the United States Department of Labor's decision to deny its petition for certification of eligibility for trade adjustment assistance as provided in 19 U.S.C. § 2271 (1988). Labor disagrees and contends that its determination should be affirmed. The court's jurisdiction is properly grounded on 19 U.S.C. § 2395 (1988) and 28 U.S.C. § 1581(d)(1) (1988).

### Background

In response to a petition filed by the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, Local 116 ("Local 116"), on behalf of the workers at Honeywell Inc. ("Honeywell"), Fort Washington, Pennsylvania, an investigation was allegedly initiated by Labor to determine whether workers at Honeywell were entitled to trade adjustment assistance. The investigative report written by Louise Brown, Petition Investigator, revealed that Labor's investigation consisted primarily of a short questionnaire completed by Honeywell and letters and telephone conversations between Ms. Brown and Edward Szkaradnik, Director of Manufacturing at Honeywell.

Honeywell operates plants in York, Pennsylvania; Phoenix, Arizona; Golden Valley, Minnesota; and Amiens, France. The products manufactured at these various Honeywell plants supplement the Fort Washington product line. Ms. Brown also found these plants are not considered by the Company to be competitive with the products produced at the Fort Washington plant. Specifically, the products made at the subject plant consist of controllers, programmers, recorders, motors, pyrometers, multiplexers, transmitters and valves. According to company officials, production at the subject plant since about June 1987 primarily consists of assembly work. Honeywell purchases printed circuit boards, both domestic and foreign made, to be assembled into instruments and control systems.

Before 1987, the Fort Washington plant manufactured a printed circuit board using the "trough hole" method. The purchased printed circuit boards are produced with a new type of technology that was never utilized at the Fort Washington plant. The method of production utilizes a surface mount technique in which the components, which are smaller than those used in the trough hole technique, are glued onto the board. Different types of equipment and robotics have made this method less labor intensive. A large proportion of these printed circuit boards are imported.

According to a company official, printed products which are imported by Honeywell are not competitive with products made at the Fort Washington plant. The imported products are complementary to a domestically produced product line. The Fort Washington plant, for example, produces UDC digital controller series 2000/3000. The imported 6000/1000 series is considered complementary and is used for different applications. Additionally, the component parts and subassemblies of the printed circuit boards that are purchased globally and domestically cannot be manufactured at the Fort Washington plant because of design or process requirements according to a company official.

The subject plant reported increasing sales and production in 1989 compared to 1988 and in the January–March period of 1990 compared to the same period in 1989. A company official stated that the decline in the employment of production workers can be associated to product design change, moving from analog to digital technology, a new manufacturing technology that is less labor intensive. Over the last several years, chips which are digital components have been replacing the analog technology.

Labor layoffs in 1989 consisted of salaried workers. These layoffs according to company officials were related to reorganization of administrative functions with a division headquarters in Phoenix, Arizona.

On May 18, 1990, Labor determined that the workers formerly employed at the Honeywell Fort Washington plant were not eligible to receive worker adjustment assistance benefits on the basis that sales production did not decline. *Negative Determination*, 55 Fed.Reg. at 21,955. On June 29, 1990, Labor declined to reconsider its earlier negative determination. *Honeywell Inc., Fort Washington, PA; Negative Determination Regarding Application for Reconsideration*, 55 Fed.Reg. 28,697 (1990).

### Discussion

In order for the Department of Labor to certify a group of workers for adjustment assistance, 19 U.S.C. § 2272 (1988) states that:

> (a) The Secretary shall certify a group of workers ... as eligible to apply for adjustment assistance under this part if he determines—
>
> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
>
> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
>
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

■ If Labor denies a request for certification, this Court may order a remand if good cause is shown or if the agency's investigation "is so marred that the Secretary's finding is arbitrary or of such a nature that it could not be based on substantial evidence." *See United Glass & Ceramic Workers v. Marshall*, 584 F.2d 398, 405 (D.C.Cir.1978); *see also Former Employees of Linden Apparel Corp. v. United States*, 13 CIT 467, 469, 715 F.Supp. 378, 381 (1989). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).

■ In accordance with this standard of review, this Court cannot in good conscience affirm a determination on the basis of the administrative record in the case at hand. The administrative record developed during the investigation, notably very scant, strongly indicates that Labor's investigative endeavors were at best lacking. This Court has previously remanded investigations to the Department of Labor when the investigations were similarly inept. *See Former Employees of Hawkins Oil & Gas, Inc. v. United States Secretary of Labor*, 15 CIT ——, Slip Op. 91–115, 1991 WL 278792 (Dec. 23, 1991); *see also Former Employees of Komatsu Dresser v. United States Secretary of Labor*, 16 CIT ——, Slip Op. 92–59, 1992 WL 100979 (April 24, 1992). In fact, in this case, the Court finds that there was actually no investigation done whatsoever. While Labor possesses considerable discretion in handling trade adjustment cases, "there exists a threshold requirement of reasonable inquiry." *Former Employees of Hawkins Oil & Gas*, 15 CIT at ——, Slip Op. 91–115 at 7, 1991 WL 278792.

Regarding the investigation, plaintiff claims that this case must be remanded back to the agency so that it can properly investigate this petition and properly fulfill its obligation under the statute.

Labor based its denial of trade adjustment assistance on the presumption that "production and sales of control instruments increased in 1989 compared to 1988 and in the first quarter of 1990 compared to the same period in 1989." *Negative Determination*, 55 Fed.Reg. at 28,697. Therefore, Labor claims that since sales did

not decrease absolutely, it must deny the petition for assistance.

Labor, however, ignores the fact that Honeywell could have increased sales and/or profitability by out-sourcing production work to foreign firms and/or affiliates, thereby slashing its domestic workforce requirements as alleged by Mr. McKenna, President of Local 116 from March 1989 through March 1991. These allegations were not investigated by Labor and should have been. Although Honeywell's profitability and sales may not have been negatively impacted by such out-sourcing to foreign companies, its domestic workforce has been significantly impacted because the total sales and production figures are not broken down and therefore do not reflect the impact of imports. *Affidavit of Michael McKenna in Support of Petitioner's Motion For Remand to The Secretary of Labor* ("McKenna Affidavit") ¶ 6.

Prior to 1987, the Fort Washington plant manufactured a printed circuit board using the "trough hole" method. Since 1987, however, a large proportion of these circuit boards were imported, thus causing an apparent reduction in labor. It is not disputed by Honeywell that a large portion of these printed circuit boards are imported.

Another example of Labor's incomplete investigation is that Labor also failed to contact Mr. McKenna. McKenna Affidavit ¶ 3.[1] Mr. McKenna contends that the outsourcing of the production of foreign companies "did and still does contribute importantly to the loss of jobs suffered by the members of [the] Union," because outsourcing results in a reduction of the number of domestic labor hours required to produce the same number of end products. *Id.* at ¶¶ 6–7. In addition, it is contended that the questionnaires he examined, which were completed by Honeywell, revealed that the company had provided Labor with incomplete and incorrect answers on substantive matters. *Id.* at ¶ 13 *et seq.* Nothing in the administrative record reveals any

type of investigation as to whether this is so or not.

Thus, Labor's investigation was cursory at best. Their failure to examine allegations made by Mr. McKenna or the Union and their failure to verify information obtained from Honeywell via telephone conversations or other correspondence was unreasonable. Therefore, this case must be remanded to the Department of Labor for further examination of Mr. McKenna's allegations and for verification of the information obtained from Honeywell.

## CONCLUSION

Accordingly, this Court finds that Labor's denial of plaintiff's petition for certification is not supported by substantial evidence. Indeed, the administrative record is so completely lacking in information, that it is difficult to believe that an investigation took place to corroborate information supplied to Labor by the parties.

Hence, this action is remanded to the Secretary of Labor, who shall, within sixty (60) days, reevaluate plaintiff's petition in strict accordance with this decision. Remand results shall be filed with the Court immediately upon the completion of the investigation, but in no event later than ninety (90) days of the issuance of this opinion.

## ORDER

This case having been duly submitted for decision following plaintiff's motion for remand to the United States Secretary of Labor, and the Court after due deliberation, having rendered a decision herein; now therefore, in accordance with said decision,

IT IS HEREBY ORDERED that plaintiff's motion is granted and this case is remanded to the United States Secretary of Labor; and it is further

ORDERED that in its remand the Secretary of Labor shall examine allegations

---

1. According to Mr. McKenna, "[a]fter reviewing all of my notes and correspondence from the Department of Labor I have been unable to discover any information that indicates that the Department of Labor ever contacted me or the Union as part of its Trade Adjustment Assistance investigation." McKenna Affidavit ¶ 3.

made by Mr. McKenna or the Union; and it is further

ORDERED that in its remand the Secretary of Labor shall verify information obtained by Honeywell via telephone conversations or other correspondence; and it is further

ORDERED that the Secretary of Labor shall, within sixty (60) days, reevaluate plaintiff's petition in strict accordance with the decision herein, and remand results shall be filed with the Court immediately upon the completion of the investigation, but in no event later than ninety (90) days of the issuance of this order.