**FORMER EMPLOYEES OF SWISS INDUSTRIAL ABRASIVES, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Court No. 92–08–00547.**

United States Court of International Trade.

Aug. 23, 1993.

Naida Thomas, pro se.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., Dept. of Justice (Patricia L. Petty), Washington, DC, for defendant.

### *Memorandum and Opinion*

GOLDBERG, Judge:

This action comes before the court on plaintiffs' motion for judgment on the agency record. Plaintiffs challenge the Department of Labor's determination that plaintiffs do not qualify for trade adjustment assistance. The court has jurisdiction pursuant to 28 U.S.C. 1581(d) (1988). Ms. Naida Thomas appeared pro se for plaintiffs.

### *Background*

On January 16, 1992, the President of Local 411 of the International Chemical Workers Union ("I.C.W.U"), Ms. Naida Thomas, filed a petition for certification of eligibility for trade adjustment assistance ("TAA") with the Office of Trade Adjustment Assistance, Department of Labor ("Labor") on behalf of all the former workers of Swiss Industrial Abrasives, Alliance, Ohio ("SIA Ohio"). A notice of initiation of an investigation was published by Labor in the Federal Register on February 6, 1992. *Investigation Regarding Certification of Eligibility to Apply for Worker Adjustment Assistance*, 57 Fed.Reg. 4646 (Dep't Labor 1992) (notice of investigation initiation).

The petition stated that the employees produced abrasives in all forms, including industrial wide belts, regular belts, portable belts, sheets, discs, rolls and jumbo rolls at the SIA Ohio plant. The petition also stated that layoffs at the plant began in December, 1990, and that 165 workers would be terminated by the scheduled closing of the plant on February 4, 1992. The petition further alleged that the plant closing was a result of increased imports from the parent company, Swiss Industrial Abrasives of Switzerland ("SIA Switzerland").

The investigation conducted by Labor consisted of a data collection letter dated January 28, 1992 forwarded to Mr. Steve Bias, Director of Human Resources, SIA Ohio. Confidential Record at 14–20. The record does not contain information indicating that Mr. Bias actually responded to this request

for information. The investigation also produced a letter from respondent's counsel, Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., dated February 5, 1992 in response to a telephone conference of February 4, 1992 with Labor. Confidential Record at 24. The investigation furthermore produced a copy of the Agreement for Sale & Purchase of Business Assets entered into on December 3, 1991 in connection with the purchase by Sancap Abrasives, Inc. of Alliance, Ohio ("Sancap") of SIA Ohio's assets. The investigation also produced a copy of the Distribution Agreement that SIA Switzerland and Sancap entered into in December of 1991. Under the terms of the agreement Sancap was appointed as SIA Switzerland's exclusive distributor in the United States from the contract year beginning December 1991. Confidential Reel at 24–46.

In addition, the agency record contains the results of a survey of three customers of SIA Ohio. Confidential Record at 47–54. Petitioner provided the names of the three customers surveyed by Labor. The customers were asked whether they had substituted imports for purchases from SIA Ohio.

On April 14, 1992, Labor issued a Notice of Negative Determination Regarding Eligibility to Apply for Worker Adjustment Assistance, which was published in the Federal Register on April 27, 1992. *Determination Regarding Eligibility to Apply for Worker Adjustment Assistance,* 57 Fed.Reg. 15331 (Dep't Labor 1992) (negative application determination). Based upon the results of its investigation, Labor concluded that the third criterion of section 222 of the Trade Act of 1974, that increases in imports had "contributed importantly" to the layoffs of the former employees of SIA Ohio, had not been satisfied. Labor specifically concluded that while customers of SIA Ohio had decreased their purchases from SIA Ohio, they had not increased their purchases of imports.

Petitioners filed a request for administrative reconsideration of Labor's notice of negative determination on April 21, 1992. Petitioners argued that, prior to 1980, SIA Ohio had manufactured its own products. The company was then bought by SIA Switzerland, and gradually increased their imports

of Swiss material until the plant closed on February 4, 1992. SIA Ohio was then purchased by Sancap, which became a distributor for SIA Switzerland. Confidential Record at 60–61.

In response to information requests from Labor, SIA Switzerland provided statistical information regarding imports and sales by SIA Ohio during the period of investigation ("POI"). Confidential Record at 64–65. Labor then determined that the materials imported by SIA Ohio from SIA Switzerland during the POI were not the same items produced at the Ohio plant, that company imports fell during the POI, and that SIA Ohio was closed because it was a "high cost plant." Labor reiterated its original finding that its survey of the company's major declining customers showed that none imported industrial sandpaper.

On the basis of its findings, Labor subsequently denied petitioners' request for rehearing on July 24, 1992. The denial was published in the Federal Register on August 4, 1992. *SIA of America, Alliance, Ohio,* 57 Fed.Reg. 34318 (Dep't Labor 1992) (negative application for reconsideration determination).

Petitioners subsequently filed a motion for judgment upon the agency record with this court in a timely manner challenging Labor's denial of plaintiff's petition for reconsideration for certification of eligibility for TAA benefits. Plaintiffs claim that Labor's negative determination is not supported by substantial evidence contained in the administrative record and is otherwise not in accordance with law.

### Standard of Review

"A negative determination by the Secretary of Labor denying certification of eligibility for [TAA] will be upheld if it is supported by substantial evidence on the record and is otherwise in accordance with law." *Former Employees of General Elec. Corp. v. U.S. Dep't Labor,* 14 CIT 608, 611, 1990 WL 129488 (1990); *See also* 19 U.S.C. § 2395(b) (1988). Substantial evidence has been held to be more than a "mere scintilla," but sufficient enough to reasonably support a conclu-

sion. *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 810 F.2d 1137 (1987). In addition, the "rulings made on the basis of those findings [must] be in accordance with the statute and not be arbitrary and capricious, and for this purpose the law requires a showing of reasoned analysis." *International Union v. Marshall,* 584 F.2d 390, 396 n. 26 (D.C.Cir.1978).

The court may order a remand pursuant to 19 U.S.C. § 2395(b) (1988) if good cause is shown. Good cause has been found, when the agency's investigation " 'is so marred that the Secretary's finding is arbitrary or of such a nature that it could not be based on substantial evidence.' " *Local 116 v. U.S. Secretary of Labor,* 16 CIT ——, 793 F.Supp. 1094, 1096 (1992) (citations omitted).

### Discussion

To certify a group of workers as eligible for trade adjustment assistance, Labor must find:

> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
>
> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, *and*
>
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a) (1988) (emphasis added). "Contributed importantly" is defined as a "cause which is important but not necessarily more important than any other cause." 19 U.S.C. § 2272(b)(1) (1988).

In the case at bar, the parties agree that production fell at the Ohio plant and that workers were separated due to the plant closing. However, they dispute the cause of the drop in production and consequent separations. Plaintiffs allege that the decline in

production and separations were caused by import substitution at the Ohio plant. Defendant claims that the Ohio plant closing was due to high costs. Defendant argues that the company's level of imports fell during the POI and that the imported articles were not like or directly competitive with products manufactured at the SIA Ohio plant. Furthermore, defendant argues that Labor's survey of the company's major declining customers showed that none imported industrial sandpaper. Public Record at 66.

■ At the outset, the court notes that the TAA provisions state that workers may be eligible for certification if an increase in imports contributes importantly to a decline in "sales *or* production" of a like or directly competitive product and subsequent separation of workers. 19 U.S.C. § 2272(a)(3) (1988) (emphasis added). The plain language of the statute thus clearly allows for certification if a petitioner's claim that outsourcing has contributed importantly to a decline in production and subsequent job elimination, is supported by substantial evidence. Where this is the case, there is no requirement that import substitution also has caused a decline in company sales. Case law confirms this interpretation of the statute. In *United Elec., Radio and Machine Workers of America v. U.S. Dep't Labor,* 14 CIT 121, 731 F.Supp. 1082 (1990), the court sustained Labor's certification of certain parts of a company that produced railway systems when employees lost their jobs because the company substituted imports for manufacturing formerly done at the plant.

Consequently, with this reading of the statute in mind, the court finds that a proper investigation of petitioners' allegations in the case at bar would seek to determine which imported products petitioners allege caused their displacement, and would then ascertain whether these articles were like or directly competitive with articles produced at the Ohio plant. Finally, the proper investigation would have determined if these imports "contributed importantly" to the petitioners' displacement.

■ The court now turns to examine the adequacy of Labor's investigation in the instant case. In doing so, the court recalls

that Labor possesses considerable discretion in its handling of TAA investigations. Yet, a threshold requirement of reasonable inquiry exists, and investigations that fall below this threshold cannot constitute substantial evidence upon which a determination can be affirmed. "In this regard, courts have observed that 'because of the *ex-parte* nature of the certification process, and the remedial purpose of the trade adjustment assistance program, the Secretary is obliged to conduct his investigation with the utmost regard for the interests of the petitioning workers.'" *Stidham v. U.S. Dep't Labor,* 11 CIT 548, 551, 669 F.Supp. 432, 435 (1987) (citations omitted). Where Labor conducts an inadequate investigation by failing to make a reasonable inquiry, the court has good cause to remand the case to Labor to take further evidence pursuant to 19 U.S.C. § 2395(b) (1988).

■ The court has conducted a thorough review of the administrative record that formed the basis for Labor's negative determination in the case at bar. The court does not find the investigation conducted by Labor and the factual basis it provided for Labor's final determination adequate.

First, Labor's denial of certification was based on the determination that the "contributed importantly" test of the Group Eligibility Requirements of the Trade Act was not met. According to Labor, the "contributed importantly" test is generally demonstrated through a survey of the workers' firm's customers to determine whether they have substituted imports for purchases from the company under investigation. Public Record at 66. Labor also applied the customer survey method in the case at bar without questioning its relevancy in evaluating the actual allegations made by petitioner that production rather than company sales had declined due to imports by SIA Ohio.

The court notes that case law has consistently held that while a customer survey may be a reasonable means of ascertaining the existence of a causal nexus between a customer's increased imports and a company's lost sales, the customer survey method does not form an adequate basis for determining whether a company's production has declined

due to outsourcing, the question under investigation according to petitioners' claim. *See Former Employees of Monroe Oil & Gas v. U.S. Secretary Labor,* 13 CIT 652, 1989 WL 90797 (1989).

Labor also relied on statistical information provided by SIA Switzerland regarding the Ohio plant's sales and imports during the POI. Public Record at 66. Labor, however, failed to clarify several aspects of the information which were incomplete or unclear. First, the statistical information provided by SIA Switzerland did not break down imports and sales along product lines as required under the statute in order to determine the impact of imports on domestic production and employment. *See* 19 U.S.C. 2272(a)(3) (1988). Instead, the record indicates that Labor relied exclusively on respondent's unsubstantiated statement that the imported products were not in competition with products being produced domestically.

Next, the statistical information provided by SIA Switzerland failed to specify whether it referred to volume or value as required. In *United Rubber, Cork, Linoleum and Plastic Workers of America, Local 798 v. Donovan,* 652 F.2d 702 (7th Cir.1981), the court found that 19 U.S.C. § 2272(a)(3) (1988), which refers to "increases of imports," requires a determination of the volume of imports involved. The court based its decision on the fact that it is possible to have an absolute decrease in the value of imports without necessarily having an absolute decrease in the quantity of imports. Yet, there is no evidence in the administrative record that Labor clarified the figures provided by SIA Switzerland on this point.

Furthermore, upon closer examination, it is the court's view that Labor ignored relevant statistical information provided by SIA Switzerland. While it is true that the figures provided by SIA Switzerland show that imports by SIA Ohio fell during the POI, the figures also show that imports increased as a percentage of actual sales. This indicates to the court that imports might have increased at the expense of domestic production, even as total sales declined. Labor, however, disregarded this information.

Finally, although the Sales and Distribution Agreements between Sancap and SIA Ohio and Sancap and SIA Switzerland comprised the bulk of the materials contained in the administrative record, Labor apparently ignored both in its investigation, even though the agreements contained information that might have been relevant to determining what effect imports had on domestic production. The agreements could have been part of an overall market strategy, whereby SIA Switzerland gradually phased out domestic production at the SIA Ohio plant in favor of a distribution agreement with Sancap serving the market with imports. Confidential Record at 33. Labor, however, did not investigate this further.

Based on all of the above, the court can only characterize Labor's investigation as misguided and inadequate at best. Although it is true that the court must defer to Labor's choice of methodology, the court cannot condone procedures such as those used in the present case. Labor's failure to examine allegations made by petitioners, its failure to require SIA Switzerland to provide full information on the impact of imports on production and employment, its failure to verify information obtained from SIA Switzerland, as well as the use of a customer survey under the circumstances to ascertain information must all be described as unreasonable. The investigation and resulting record, therefore, cannot constitute substantial evidence upon which Labor's determination can be affirmed. Consequently, this case must be remanded to Labor for the purpose of conducting a more complete investigation.

Upon remand, Labor is instructed to examine petitioner's claim that imports by SIA Ohio from SIA Switzerland of like or competitive products caused production and employment to fall at the Ohio plant. This investigation must include verified import and production data sufficiently broken down along product lines to reflect the impact of imports by SIA Ohio upon production. The data must be based on volume rather than value. Finally, Labor must take into account the Sales and Distribution Agreements contained in the record.

### Conclusion

Accordingly, the court finds that Labor's denial of plaintiffs' petition for certification for eligibility for trade adjustment assistance is not supported by substantial evidence. Therefore, this action is remanded to Labor, with instructions to reinvestigate plaintiffs' petition in accordance with the instructions provided above. Remand results shall be filed with the court within 60 days of the date of this opinion.

SO ORDERED.