**Raelayne A. PAULING, Plaintiff,**

v.

**Robert B. REICH, United States Secretary of Labor, Defendant.**

**Slip Op. 96–52.**
**Court No. 93–07–00415.**

United States Court of International Trade.

March 11, 1996.

Steven Tinsley, for plaintiff.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael S. Kane), Washington, DC, for defendant.

**OPINION**

MUSGRAVE, Judge.

### Introduction and Background

On March 22, 1993, Plaintiff Raelayne A. Pauling, a former employee of Maynard Oil Company ("Maynard"), filed a petition with the Secretary of Labor ("Labor") seeking certification to apply for trade adjustment assistance pursuant to 19 U.S.C. § 2271 (1988). Plaintiff was laid off from Maynard in April of 1992, where she was engaged in administrative functions. She filed her petition seeking certification for trade adjustment assistance in March of 1993. The two other workers named on the petition were dismissed from Maynard in August and October of 1991. Prior to plaintiff's petition, all workers from a wholly owned subsidiary of Maynard, BDK Drilling Company, had been certified as eligible for trade adjustment assistance due to the liquidation of BDK. Labor denied plaintiff's petition (*Negative Determination Regarding Eligibility To Apply For Worker Adjustment Assistance*, 58 Fed. Reg. 21319 (April 20, 1993)), citing her failure to petition on behalf of a "group" of workers as required by statute. Labor also denied plaintiff's subsequent request for reconsideration (*Dismissal of Application for Reconsideration*, 58 Fed.Reg. 32550 (June 10, 1993)).

■ This Court has jurisdiction to review Labor's determination pursuant to 19 U.S.C. § 2395(c). Negative determinations by Labor denying certification for trade adjustment assistance eligibility are upheld by this Court if they are supported by substantial evidence. 19 U.S.C. § 2395(b) "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd*, 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted). Plaintiff requests a remand on the basis that Labor performed an inadequate investigation which caused it to conclude erroneously that BDK's employees were not part of the group on whose behalf her petition was filed. "A reviewing court may remand a case and order the Secretary [of

Labor] to further investigate if 'good cause [is] shown.' 19 U.S.C. 2395(b). 'Good cause' exists if the Secretary's chosen methodology is so marred that [his] finding is arbitrary or of such a nature that it could not be based on substantial evidence." *Former Employees of Linden Apparel Corp. v. U.S.*, 13 CIT 467, 469, 715 F.Supp. 378, 381 (1989) (quotations omitted).

### Discussion

19 U.S.C. §§ 2271(a) and 2272(a) require that a petition for trade adjustment assistance be filed on behalf of a "group of workers," which the implementing regulations define as "three or more workers in a firm or an appropriate subdivision thereof." 29 C.F.R. § 90.2. Another statutory provision, 19 U.S.C. § 2273(b)(1), declares that

[a] certification under this section shall not apply to any worker whose last total or partial separation from the firm or appropriate subdivision of the firm before his application under section 2291 of this title occurred—(1) more than one year before the date of the petition on which such certification was granted. . . .

These rules entail that a valid petition must be signed by three or more workers who had been separated from the firm or an appropriate subdivision thereof within one year prior to the petition's filing.

Furthermore, before certifying a group of workers, Labor must determine that "a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated." 19 U.S.C. § 2272(a)(1). This inquiry is additional and separate from the formal requirements governing the submission of petitions: even if the workers named on a petition are potentially eligible for certification, Labor may not certify a group for trade adjustment assistance unless a significant proportion or number of the firm's workers have been dismissed or are threatened with dismissal.

▮▮▮ The two workers other than plaintiff whose names appeared on the subject petition were dismissed from Maynard in

August and October of 1991, more than a year before the filing of the petition; therefore, they were not eligible for certification under 19 U.S.C. § 2273(b)(1). This fact alone establishes that plaintiff's petition did not satisfy the statutory mandate that petitions be filed on behalf of a group of workers. Even if the two other individuals named on the petition had been eligible for trade adjustment assistance, Labor independently determined that a significant number or proportion of Maynard's employees had not been dismissed and were not threatened with dismissal. Labor came to this conclusion based on written information that it received from Maynard's Vice President of Finance stating that plaintiff was the only employee out of twenty-five Maynard employees who had been dismissed in the previous fifteen months. Labor also determined that Maynard planned no additional dismissals. The nature and extent of the investigation in trade adjustment assistance matters rests within the sound discretion of Labor. *Miller v. Donovan*, 620 F.Supp. 712, 9 CIT 473 (1985); *Woodrum v. Donovan*, 544 F.Supp. 202, 4 CIT 46 (1982). Obtaining the relevant information from Maynard's Vice President of Finance was not a marred or arbitrary methodology that vitiated the substantiality of that information. Based on the adequate evidence Labor accumulated in its investigation, including the information regarding Maynard employment issues that Labor gleaned from its correspondence with Maynard, Labor's negative determination was supported by substantial evidence.

Plaintiff contends that her administrative position was eliminated due to the liquidation of Maynard's wholly owned subsidiary, BDK Drilling Company, whose operations allegedly generated a substantial portion of her administrative duties. Plaintiff argues that these workers should be subsumed under the group on whose behalf her petition was filed because BDK was an "appropriate subdivision" of Maynard for purposes of the statute. However, Labor determined that Maynard had minimum dealings with BDK, once again based on information supplied by Maynard's Vice President of Finance. [_____]. Plaintiff submitted an affidavit dated June 1, 1994 to this Court in support of her petition

for remand in an effort to refute Labor's determination that there were minimum dealings between Maynard and BDK. Plaintiff stated therein that (1) plaintiff's administrative duties at Maynard included typing authorizations for BDK expenditures, which authorizations required approval by Maynard executives; (2) plaintiff prepared daily drilling reports of BDK activities; and (3) plaintiff has personal knowledge of the fact that Maynard staff managed personnel functions for BDK's eighty-six employees. The appropriate time for submitting this information would have been in connection with plaintiff's request for administrative reconsideration, wherein plaintiff argued that "a significant portion of my job duties were directly related to the operations of the subsidiary, BDK drilling." The whole purpose of the reconsideration procedure is to allow petitioners to demonstrate to the administrative authorities that Labor erred in its factual or legal findings. Since the affidavit was not submitted at the appropriate time to the Labor officials vested with the authority to conduct the investigation, it is not part of the administrative record and is therefore not properly before the Court. Even if this information had been before Labor in its initial investigation or subsequent review for reconsideration, Labor possessed more than a mere scintilla of genuine and independent evidence allowing it to conclude that BDK was not an appropriate subdivision of Maynard for the purposes of the statute. Therefore, Labor's findings with regard to the relationship between Maynard and BDK were supported by substantial evidence.

## CONCLUSION

Plaintiff's petition was legally insufficient because the two other individuals named on the petition were not eligible for trade adjustment assistance certification. The evidence Labor collected pursuant to a reasonable investigative methodology constituted substantial evidence both that BDK was not an appropriate subdivision of Maynard for purposes of the statute and that a substantial number or portion of Maynard's workers had neither been dismissed nor threatened with dismissal. The Court holds that plaintiff has failed to demonstrate good cause for further investigation and that Labor's negative determination was supported by substantial evidence.

## JUDGMENT

This action having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is

**ORDERED** that the determination of the Secretary of Labor denying plaintiff's petition for certification of eligibility to apply for trade adjustment assistance, *Negative Determination Regarding Eligibility To Apply For Worker Adjustment Assistance*, 58 Fed. Reg. 21319 (April 20, 1993) be affirmed; and that Labor's *Dismissal of Application for Reconsideration*, 58 Fed.Reg. 32550 (June 10, 1993) be affirmed; and therefore it is

**ORDERED** that plaintiff's motion for remand be, and hereby is, denied; and it is further

**ORDERED** that this action be, and hereby is, dismissed.