**Slip. Op. 00-88**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Judge Judith M. Barzilay**

———————————————————————

:

FORMER EMPLOYEES OF ALCATEL
TELECOMMUNICATIONS CABLE,               :

              Plaintiff,               :               Court No. 98-03-00540
                                                                        **Public version**

           v.               :

HERMAN, SECRETARY OF LABOR,               :

            Defendant.               :

———————————————————————

[Plaintiffs' motion to certify employees for trade adjustment assistance denied; case remanded to Department of Labor for findings as to imports of like or directly competitive products.]

Decided: July 27, 2000

*Wiley, Rein & Fielding*, *(Eileen P. Bradner,) Timothy C. Brightbill, C. Russell Clause* for Plaintiff.

*David W. Ogden*, Acting Assistant Attorney General; *David M. Cohen*, Director; *Velta A. Melnbrencis*, Assistant Director; *(Henry Felix,)* Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice; *Gary Bernstecker*, Office of the Solicitor, Department of Labor, of counsel, for Defendant.

**OPINION**

**BARZILAY, JUDGE:**

**I.  INTRODUCTION**

Before the court is *Pls.' Mot. for J. on the Agency R.* (*"Pl.'s Mot.*") contesting the Secretary

of the United States Department of Labor's ("Labor" or "Department") denial of Plaintiff's petition for

trade adjustment assistance ("TAA") under section 221(a) of the Trade Act of 1974, as amended by

the Omnibus Trade and Competitiveness Act of 1988 (P.L. 100-418).[1]  Plaintiffs claim: (1) Labor's

denial of the TAA petition was unsupported by substantial evidence; (2) Labor's investigation violated

Plaintiffs' due process rights; and (3) Plaintiffs are entitled to receive TAA benefits because they meet

all of the statutory criteria for trade adjustment assistance.  They ask this court to certify Plaintiffs as

eligible to receive trade adjustment assistance.

For the reasons set forth in the following opinion, the court holds that the Secretary's negative

determination regarding the petition for trade adjustment assistance is unsupported by substantial

evidence and arbitrary and capricious.[2]  Plaintiffs' motion for judgment on the agency record, asking the

court to certify the workers for TAA is therefore denied; however, the case is remanded for further

findings as to whether Alcatel had increased imports of articles like or directly competitive with articles

produced by the company's United States facilities.[3]

## II.  BACKGROUND

In October 1997, Alcatel Telecommunications Cable ("Alcatel"), a manufacturer of optical

fiber for use in telephone cables, announced that it would close its manufacturing facility located in

Roanoke, Virginia ("Roanoke facility"), and that over 150 employees would be laid off due to a loss of

customers and revenue.[4]  On October 23, 1997, three employees filed a TAA petition with the

---

[1]19 U.S.C. § 2271, *et. seq*. (1994).

[2]*See infra* Part III for a discussion of the appropriate standard of review.

[3]The court need not consider Plaintiffs' due process claim at this time, nor will it order Labor to certify Plaintiffs as eligible for assistance.

[4]The *Supplemental Administrative Record, Business Confidential Information* ("*Supp. Conf. AR*") in this case states that Alcatel's closing of the Roanoke plant was said to affect

Department of Labor ("first petition"). *Id.* Approximately seven weeks after receiving the first petition,

the Department, pursuant to 19 U.S.C. § 2271(a), published a notice in the *Federal Register* that it

was initiating an investigation of the petition. *See Investigations Regarding Certifications of*

*Eligibility to Apply for Worker Adjustment Assistance*, 62 Fed. Reg. 65095 (Dec. 10, 1997).

Labor initiated the investigation on November 17, 1997. *See Def.'s Opp. to Pls.' Mot. for J. Upon*

*the Agency R. ("Def.'s Opp.")* at 3. Thereafter, the Department issued an undated investigative

report based on Alcatel's responses to a U.S. Department of Labor Confidential Data Request issued

to Alcatel by the Virginia Employment Commission to determine worker eligibility for NAFTA

Transitional Adjustment Assistance ("NAFTA-TAA") benefits, which addressed mainly the effects of

Mexican and Canadian imports. *See Pls.' Mem.* at 4; *Def.'s Opp*. at 3; *Supp. Conf. AR* at 9-14.

    According to Alcatel's responses to the Confidential Data Request, [

---

approximately [   ] workers. *Supp. Conf. AR* at 7. Alcatel's *Mem. of Law in Supp. of Pls.' Mot. for J. Upon the Agency R.* ("*Pls.' Mem*.") indicates that "215 employees would be laid off due to a loss of customers and revenue." *Pls.' Mem.* at 3. The actual number is thus unclear. For purposes of this case, it is important to note that the entire Roanoke plant was closed, and all workers employed at that plant lost their jobs.

] *Supp. Conf. AR* at 11-12.

On December 9, 1997, Labor issued a *Negative Determination Regarding Eligibility to Apply for Worker Adjustment Assistance.  Id.* at 15-16.  In its determination, the Secretary concluded that criterion three of the group eligibility requirements of the Trade Act of 1974 had not been met. [5]  *Id.* at 15.  The Secretary of the Department found:

> Alcatel Cable closed the Roanoke plant and has transferred all production from Roanoke, Virginia to another Alcatel optical fiber manufacturing facility located within the U.S. . . .  After careful review, I determine that all workers of Alcatel Cable, Roanoke, Virginia are denied eligibility to apply for adjustment assistance under Section 223 of the Trade Act of 1974.

*Id.* at 16.  On December 10, 1997, Labor published notice in the Federal Register that a petition for trade adjustment assistance had been filed and an investigation commenced.  *See* 62 Fed. Reg. 65095.  On December 11, 1997, the Department sent letters announcing its negative determination to Alcatel and to the three petitioning workers. *See Supp. Conf. AR.* at 19-22.  Notice of the determination was published in the Federal Register on January 6, 1998, in accordance with 19 U.S.C. § 2273 (1994).  *See Notice of Determinations Regarding Eligibility to Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance*, 63 Fed. Reg. 577 (Jan. 6, 1998).  The Department did not provide actual notice regarding the first petition to any other former employees at any time.

On December 8, 1997, Joan K. Saunders and two other former Alcatel employees filed a petition ("second petition")  on behalf of the same worker group, stating that the shifting of production to an Alcatel affiliate in Brazil had caused the closure of the Roanoke plant and the loss of the Roanoke

---

[5]As will be later discussed in detail, the third criterion of 19 U.S.C. §2272(a)(3) (1994) is that increases of imports of articles like or directly competitive with articles produced by the firm or appropriate subdivision have contributed importantly to the separations of the workers and to the absolute decline in sales or production.

employees' jobs. *See Administrative Record* ("*AR*") at 6. The Department launched no investigation

of the allegations in Ms. Saunders' petition, despite her claim that production was being outsourced to

an Alcatel plant in Brazil. Rather, by form letter dated January 14, 1998, the Department informed Ms.

Saunders that it had denied her petition based on a "recently issued negative determination covering the

same worker group" listed on her petition, i.e. former employees of Alcatel's Roanoke facility. *See AR*

at 7.

Appearing *pro se* and by letter dated February 14, 1998, Ms. Saunders requested judicial

review of the Secretary's determination. *See Def.'s Opp.* at 8. The Clerk of the United States Court

of International Trade accepted the letter as fulfilling in principle the requirements of the summons and

complaint for the commencement of a civil action under 28 U.S.C. § 1581(i) (1994) to challenge

Labor's denial of her petition. On April 17, 1998, Defendant filed a motion to dismiss for lack of

jurisdiction, asserting that Plaintiffs' complaint was untimely under 28 U.S.C. §1581(d)(1), because

Plaintiffs had failed to file their petition for judicial review within the sixty-day period of limitations

mandated by 19 U.S.C. §2395(a) (1994). Plaintiff responded *pro se* to Defendant's motion to

dismiss, and Counsel was appointed for petitioners by this court on July 28, 1998. Thereafter, the

court denied Defendant's motion to dismiss, holding that the sixty-day limitations period under

§2395(a) was not applicable, and that the action had been timely and properly commenced within the

two-year limitations period under 28 U.S.C. §1581(i).

In this action, Ms. Saunders claims that (1) the former workers of Alcatel's Roanoke facility

are entitled to TAA benefits; (2) the Department's negative determination regarding eligibility to apply

for TAA benefits was based on insufficient evidence; (3) the Department should have investigated the

allegations in her petition rather than relying on the first negative determination; and (4) Labor's failure

to provide her actual notice of the 10-day period in which to request a hearing on the first petition deprived her of due process.

### III. STANDARD OF REVIEW

Cases contesting the denial of trade adjustment assistance are generally filed under 28 U.S.C. §1581(d); this court must uphold a determination by the Department of Labor if it is supported by substantial evidence and is otherwise in accordance with law. *See* 19 U.S.C. § 2395(b); *Woodrum v. Donovan*, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd* 737 F.2d 1575 (Fed. Cir. 1984). "Substantial evidence has been held to be more than a 'mere scintilla,' but sufficient enough to reasonably support a conclusion." *Former Employees of Swiss Industrial Abrasives v. United States*, 17 CIT 945, 947, 830 F. Supp. 637, 639-40 (1993) (citing *Ceramerica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd*, 810 F. 2d 1137 (Fed. Cir. 1987)). In evaluating the evidence underlying Labor's conclusions, the court may consider only the administrative record before it. *See* 28 U.S.C. § 2640(c) (1994); *International Union v. Reich*, 22 CIT —, —, 20 F. Supp. 2d 1288, 1292 (1998).

Defendants observe that 28 U.S.C. § 2640(e) provides, "[i]n any civil action not specified in this section, the Court of International Trade shall review the matter as provided in section 706 of title 5." *Def.'s Opp.* at 14. Although a TAA case, this particular action was accepted by the court as filed under 28 U.S.C. § 1581(i). As section 2640 does not specify the standard of review for civil actions filed under 28 U.S.C. §1581(i), the court reviews the motion under 5 U.S.C. §706 (1994). In reviewing an agency action under this statute, the court must "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 5 U.S.C. § 706(2)(A). Not surprisingly, the court has found no

precedent regarding how the arbitrary and capricious standard should be applied in a TAA dispute.

The court must therefore follow the general guidance of the Supreme Court:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."

*Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto. Ins.,* 463 U.S. 29, 43 (1983) (citations

omitted). The arbitrary and capricious standard of review is narrower than the substantial evidence

standard, and the court will therefore remand Labor's negative determination only if it finds that

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.*

## IV. DISCUSSION

A.     **The court must examine Plaintiffs' substantive claims regarding the first petition in order to determine the reasonableness of Labor's refusal to conduct an investigation   pursuant to the second petition.**

Upon receipt of a properly filed and verified petition, the Director of the Office of Trade

Adjustment Assistance "shall initiate, or order to be initiated, such investigation as he determines to be

necessary and appropriate." 29 CFR §90.12 (1995). In this case, the Secretary summarily denied

the second petition as duplicative of the first petition, without conducting a separate investigation.

Plaintiffs claim that by failing to conduct an investigation, Labor "violat[ed] its obligation to investigate

every petition it receives." *Pls.' Mem*. at 29-30.   In response, Defendant postulates, "[t]o suggest

that the Department had an obligation to investigate an entirely duplicative petition for trade adjustment assistance benefits filed on the heels of a completed investigation regarding the eligibility of the *same worker group* is simply not logical." *Def.'s Opp.* at 16.

The court cannot agree with Plaintiffs' contention that the Department must investigate every petition it receives, including those duplicative of previously-filed petitions. Indeed, "[i]t is well-settled law that the nature and extent of an investigation are matters resting within the sound discretion of administrative officials." *Former Employees of VTC Inc. v. Reich*, 17 CIT 1433, 1437, 1993 WL 541685, at *3, (Dec. 30, 1993) (citations omitted). Limits on Labor's discretion do, however, exist. "[N]o deference is due to determinations based on inadequate investigations." *Former Employees of Hawkins Oil and Gas, Inc., v. United States Secretary of Labor*, 17 CIT 126, 130, 814 F. Supp. 1111, 1115 (1993) (citations omitted). Therefore, it is not per se unreasonable or inadequate for Labor to deny a petition without investigation, based on the fact that the petition is entirely duplicative of a previously filed petition. This is not to validate Defendant's blanket statement that investigation of a duplicative petition is illogical. Rather, the court must evaluate, on a case by case basis, whether or not denial of the second petition was reasonable under the particular circumstances at hand.

Defendant claims that because Plaintiffs are before the court pursuant to its jurisdiction under 28 U.S.C. §1581(i) rather than §1581(d)(1), Plaintiffs are allowed to challenge only the "administration and enforcement of the procedures employed by the Secretary of Labor in arriving at the determination to deny Plaintiffs' petition" and that "[a]s a consequence, any challenge to the *merits* of the Secretary's negative determination regarding the First Petition is necessarily outside the scope of this litigation, as well as untimely." *Def.'s Opp.* at 17. The court disagrees.

The court cannot strictly defer to Labor's actions without undertaking a review of the investigation, merely because Plaintiffs could not timely file their petition for TAA under §1581(d)(1), "which would necessarily entail a review of the Department's investigation and ultimate decision-making process." *Def.'s Opp*. at 18. If the second petition was duplicative of the first, as Defendant contends, it would have involved the same petitioners as well as the same matters to be investigated. Clearly, the petitioners before the court in this case are different from those who filed the first petition, although all are former Alcatel employees. In order to determine whether the matter to be investigated is the same, the court must review the first petition. Moreover, the court must assess the investigation conducted pursuant to the first petition, as it was the only one carried out for the benefit of the Alcatel workers. Only then can the court properly assess whether the investigation under the first petition was sufficiently adequate to deny the second petition.

**B.      The Secretary's negative determination regarding the eligibility of Alcatel employees for TAA benefits was unsupported by substantial evidence and arbitrary and capricious.**

The trade adjustment assistance program allows workers whose job losses are attributable to import competition to receive unemployment compensation, training, job search, relocation allowances, and other employment services. *See* 19 U.S.C. §§ 2291-2298 (1994); *Former Employees of Linden Apparel Corp. v. United States*, 13 CIT 467, 467, 715 F. Supp. 378, 379 (1989). Section 221(a) of the Trade Act of 1974 provides:

(a)      The Secretary shall certify a group of workers . . . as eligible to apply for adjustment assistance under this subpart if he determines - -
      (1)      that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2)     that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3)     that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

(b)     For purposes of subsection (a)(3) of this section - -

(1)     the term "contributed importantly" means a cause which is important but not necessarily more important than any other cause.

19 U.S.C. §2272.  "It is settled law that plaintiffs must meet all three requirements of section 222 of the Trade Act to be entitled to relief." *Former Employees of CSX Oil and Gas Corp. v. United States*, 13 CIT 645, 649, 720 F. Supp. 1002, 1006 (1989).  The Department determined that Plaintiffs were separated from employment due to a domestic transfer of production, and had failed to satisfy the third requirement that increased imports contribute importantly to the workers' separations. Plaintiffs claim that the Department's negative determination was not based on substantial evidence for three reasons: (1) the Department erred by limiting the investigation to the issue of whether petitioners were entitled to NAFTA-TAA benefits, as opposed to general TAA benefits; (2) Labor's factual investigation was "woefully inadequate" in that it did not produce any information that would allow the Department to make an informed decision regarding the separation of the Alcatel employees; and (3) the Department denied the petitions on the basis of an erroneous belief that Alcatel was shifting production to other U.S. facilities.  *See Pls.' Mem*. at 12-13.  The court will examine each of Plaintiffs' arguments in turn.

*(1)     The Department's use of a NAFTA-TAA questionnaire as the basis for its negative determination is probative of the adequacy of the investigation, but does not by itself demand a remand or judicial certification of the workers as eligible for TAA.*

Plaintiffs assert that the questionnaire upon which the Department's negative determination

was based addressed only NAFTA-TAA issues, and therefore "did not pose the questions necessary in order to assess petitioners' eligibility for TAA benefits." *Pls.' Mem*. at 13. [

] *Supp Conf. AR* at 11-12.

Plaintiffs claim that "[d]etermining that petitioners were not entitled to NAFTA-TAA benefits was of little to no relevance to the issue of whether they were entitled to general TAA benefits." *Pls.' Mem.* at 14. Defendants do not dispute that a NAFTA-TAA questionnaire, rather than a TAA questionnaire, was used in Labor's investigation of the first petition for TAA benefits. Rather, Labor claims that the NAFTA-TAA questionnaire provided all of the necessary data and critical information for the Secretary to properly make an informed eligibility determination; therefore, the Department's use of the incorrect form was merely harmless error. *Def.'s Opp*. at 24. Plaintiffs responded that the use of the NAFTA-TAA questionnaire was material error, because it did not elicit the relevant information that would have revealed to the Department the loss of jobs and production to Brazil, a non-NAFTA country. *Reply to Def.'s Opp. to Pls.' Mot. for J. Upon the Agency R. ("Pls.' Reply")* at 2.

The court agrees with Defendants that use of the NAFTA-TAA questionnaire instead of a general TAA questionnaire is not enough by itself to require a remand. In the NAFTA-TAA Confidential Data Request, questions 4 and 7 relate to the third criterion for TAA, that import substitution contribute importantly to the separation of the workers. *Supp. Conf. AR* at 11. Although neither question requires that the answer be provided solely in relation to NAFTA countries, because

the form is entitled "NAFTA Transitional Adjustment Assistance Confidential Data Request," a

respondent may understandably presume that the entire questionnaire concerns imports from only

Mexico or Canada. Question 4 asks: "Has your company increased its imports of articles that are

like or directly competitive with articles produced by your firm?" *Id.* The form then provides that if

the "yes" box is checked, the company should check the box indicating whether the imports

originated in Mexico, Canada, or "other country." *Id.* Alcatel checked the [

] *Id.* Similarly,

question 7 asks, "Have your company's customers increased imports of articles that are like or

directly competitive with articles produced by your firm?" *Id.* As with question 4, the [

] *Id.*

The court does agree with Plaintiffs' characterization of this investigation as cursory, based,

in part, on the use of a form clearly meant for another claim. However, as questions regarding

increased imports from other countries do appear on the NAFTA-TAA Confidential Data Request,

the court cannot agree with Plaintiffs that Labor's use of the NAFTA-TAA questionnaire renders

"the Secretary's chosen methodology . . . 'so marred that [his] finding is arbitrary,'" thus providing

the good cause necessary to remand the Department's negative determination. *Pls.' Mem*. at 15

(quoting *Linden*, 13 CIT at 469, 715 F. Supp. at 381 (citations omitted)). The use of a NAFTA-

TAA questionnaire does not by itself render the Secretary's decision arbitrary and capricious.

> (2)     *The Department of Labor failed to adequately investigate whether imports from other countries contributed importantly to petitioners' job losses*.

Plaintiffs claim that had Labor focused on an analysis of whether petitioners were eligible for

TAA benefits, "it would have determined that the Alcatel workers *were* entitled to such benefits by

virtue of the company outsourcing to its non-U.S. plants a majority of the production previously performed in Roanoke." *Pls.' Mem.* at 15. According to Plaintiffs, because the Department did not focus on TAA benefits, it conducted an inadequate determination based on incomplete and inaccurate data. *Id.* Furthermore, "the Department did not conduct a field investigation, or confer on the telephone or in writing with any employees or other sources regarding the veracity of Alcatel's claims." *Id.* at 16. Additionally, Plaintiffs claim, the Department did not investigate news reports, examine Alcatel's corporate structure, or verify Alcatel's assertions regarding its domestic production and lack of imports. *See id.* at 16, 17.

Defendant initially responds that the court is required to give substantial deference to Labor's methodology.[6] Defendant asserts that the investigation into Alcatel's claims was adequate and that it was reasonable for the Secretary to base her negative determination upon the results of that investigation. *Def.'s Opp*. at 25. According to the Department, "plaintiffs rely upon a series of unsupported, outside the record documents and statements," which should not be considered by the court. *Id.* at 24. Had Plaintiffs wished to submit such information for consideration, "the appropriate time . . . would have been in connection with a request for reconsideration of the Secretary's denial of the Second Petition, . . . and not during the judicial review process in this Court." *Id.* at 25 (citing *Pauling v. Reich*, 20 CIT 358, 361, 930 F. Supp. 618, 621 (1996)).

Although Labor generally enjoys broad discretion in managing TAA investigations, the court owes no deference to determinations based on inadequate investigations. *See Hawkins*, 17 CIT at

---

[6]*See supra* Part IV, Section A.

130, 814 F. Supp. at 1115. Rather, the "rulings made on the basis of those findings [must] be in accordance with the statute and not be arbitrary and capricious, and for this purpose the law requires a showing of reasoned analysis." *Int'l Union v. Marshall*, 584 F. 2d 390, 396 n. 26 (D.C. Cir. 1978). "In this regard, courts have observed that 'because of the ex-parte nature of the certification process, and the remedial purpose of the trade adjustment assistance program, the Secretary is obliged to conduct his investigation with the utmost regard for the interests of the petitioning workers.'" *Stidham v. U.S. Department of Labor*, 11 CIT 548, 551, 669 F. Supp. 432, 435 (1987) (citations omitted).

While only permitted to consider information contained within the administrative record,[7] if good cause is shown the court may order a remand pursuant to 19 U.S.C. § 2395(b). The Secretary of Labor may be required to take further evidence when the agency's investigation is so impaired that the Secretary's finding could not be based on substantial evidence. *See Linden*, 13 CIT at 469, 715 F. Supp. at 381; *Swiss Industrial,* 17 CIT at 947, 830 F. Supp. at 640 (quoting *Local 116 v. U.S. Secretary of Labor*, 16 CIT 490, 492, 793 F. Supp. 1094, 1096 (1992)(citations omitted)). Indeed, this court has remanded cases to the Department of Labor when investigations were so inept as to provide such a scant administrative record that an affirmation of Labor's determination would have been as arbitrary as the investigation itself. *See Local 116*, 16 CIT at 493, 793 F. Supp. at 1096 ("In accordance with this standard of review, this Court cannot in good conscience affirm a determination on the basis of the administrative record in the case at hand."). It is therefore soundly

---

[7] *See* 28 U.S.C. §2640(c); *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW Local 1283 v. Reich*, 22 CIT —, —, 20 F. Supp.2d 1288, 1292 (1998) ("The Court decides an adjustment assistance case based on the administrative record before it.").

within the court's judicial authority to remand an investigation that falls below the "threshold requirement of reasonable inquiry," and demand further evidence and investigation if necessary. *Hawkins,* 17 CIT at 130, 814 F. Supp. at 1115.

In the case at bar, an examination of the administrative record reveals no more than an inadequate investigation lacking detail, and certainly not one conducted with utmost regard for the workers. *See Stidham*, 11 CIT at 551, 669 F. Supp. at 435 (citations omitted). The court therefore holds that the Department has failed to make a reasonable inquiry into the claims of Alcatel's former employees, and remands the case to Labor to take further evidence. *See Swiss Industrial*, 17 CIT at 949, 830 F. Supp. at 641.

First, Labor based its negative determination on Alcatel's responses to a questionnaire designed not for TAA petitions, but for NAFTA-TAA requests. [

] *Conf. Supp. AR* at 11. Plaintiffs claim, and Defendant does not dispute, that the Department relied on nothing more than the NAFTA-TAA questionnaire in making its determination. *Pls.' Mem.* at 17.

Second, Labor did nothing to verify the accuracy of Alcatel's responses to the questions in that Confidential Data Request. This court has previously held that "failure to verify information obtained . . . via telephone conversations or other correspondence [is] unreasonable." *Local 116*, 16 CIT at 494, 793 F. Supp. at 1097. Yet the Department did not conduct a field investigation, confer on the telephone or in writing with employees or other sources regarding the legitimacy of Alcatel's claims, or examine publicly-available news reports in which an Alcatel spokesperson conceded that

production at the Roanoke facility was being transferred overseas. *Pls.' Mem.* at 16-17.

Third, in its final determination, the Department merely submitted, with no known investigation, that imports did not contribute importantly to worker separation. *Conf. Supp. AR.* at 17-18. In an attempt to bolster its suggestion, Defendant repeats this conclusion in its response brief: "the Department found that plaintiffs were separated from employment due to a domestic transfer of production. . . . In addition, the administrative record contains no evidence that this transfer of production was related to import penetration." *Def.'s Opp*. at 20. As noted earlier, an administrative determination is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem. . . ." *Motor Vehicle Mfr.'s Ass'n,* 463 U.S. at 43. Regarding trade adjustment assistance matters, this court has stated,

> [A] proper investigation of petitioners' allegations in the case at bar would seek to determine which imported products petitioners allege caused their displacement, and would then ascertain whether these articles were like or directly competitive with articles produced at the . . . plant. Finally, the proper investigation would have determined if these imports "contributed importantly" to the petitioners' displacement.

*Swiss Industrial*, 17 CIT at 948, 830 F. Supp. at 640. Examination of the administrative record in this case reveals an utter lack of investigation into whether or not increases of imports of articles like or directly competitive with articles produced by Alcatel contributed importantly to the workers' separation. The Department entirely failed to consider whether the former Alcatel employees met the third criterion for TAA. *See Supp. Conf. AR* at 17-18.

An unsupported conclusion simply does not suffice as a proper investigation. Indeed, the court agrees with Plaintiffs that "[i]t was the sheer inadequacy of the investigation that left this administrative record so barren; as such, Defendant cannot now use it to justify a flawed finding." *Pls.' Reply Br.* at 3. The Department's investigation did not meet the threshold requirement of

reasonableness; Labor's denial of the petition was arbitrary and capricious and unsupported by substantial evidence. The court therefore remands the case for a thorough investigation of whether imports of like or directly competitive products contributed importantly to the workers' job losses. *See* 19 U.S.C. § 2272(a)(3). The court will not demand that Labor consider specific documentation, public news reports, or other material upon remand. However, in its remand determination to the court, Labor must provide evidence and explanation that it has made a reasonable and adequate inquiry into whether increased imports of like or directly competitive products contributed importantly to the separation of the employees.

## V. CONCLUSION

For the foregoing reasons, the court remands Labor's negative determination for further investigation into whether like or directly competitive products contributed importantly to the separation of the Roanoke employees. Judgment will be entered for Plaintiffs accordingly.

Dated: _____        _____
    New York, NY                    Judith M. Barzilay
                                    Judge